STATE, EX REL. GEORGE J. FERRY, v. CHAUNCEY G. WILLIAMS, COLLECTOR, &c.

1. Every person is entitled to the inspection of documents of a public nature, provided he shows the requisite interest therein.

2. It is not necessary that a suit should be pending before such inspection will be granted.

3. It is sufficient, if the person seeking inspection has such interest in a specific controversy as will enable him to maintain or defend an action, for which the public documents will furnish competent evidence or necessary information.

4. It is not essential that he should be legally capable of maintaining or defending an action in his own private behalf; but it will entitle him to inspection, if he may act in such suit as a representative of a common or public right.

5. This court may, in its discretion, at the instance of private persons, act by *mandamus, certiorari* or *quo warranto*, for the redress or prevention of public wrongs by public bodies and officers, whose official sphere is confined to some political division of the state, whenever the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights, and the public convenience will be subserved by the remedy desired.

6. A citizen of Orange, desiring to ascertain whether the provisions of the city charter in regard to licensing saloons have been observed, with a view of securing due obedience to the law, is entitled to an inspection of the letters of recommendation filed with the collector of taxes as the basis for the issue of pending licenses.

On application for *mandamus.*

Argued at February Term, 1879, before Justices VAN SYCKEL, KNAPP and DIXON.

For the relator, *J. H. Stone.*

*Contra, J. L. Blake* and *J. Vanatta.*

The opinion of the court was delivered by

DIXON, J.   By a supplement to the charter of the town of Orange, approved March 30th, 1875, (*Pamph. L., p.* 399, § 8,) it was provided that no person should be allowed to sell ale, &c., within the city limits, unless he were first licensed by the collector of taxes, had paid a license fee, and had filed with the collector a letter of recommendation, signed by six legal voters and freeholders, who had signed no other recommendation within a year, to the effect that the applicant was of good moral character and of good repute for temperance.   The relator in this case, a citizen of Orange, believing

that the requirements of this law as to these letters of recommendation were not obeyed, and desiring, with other citizens, to secure a due observance of its provisions, applied to the collector of taxes for an inspection of the letters on which then existing licenses had been granted. The collector refused his request, and the common council, on appeal to them, approved of this refusal, and instructed the collector to persist therein. The relator now seeks a writ of *mandamus* to enforce his alleged right of inspection, and the collector denies that he has such a right.

Whether he has or not must be decided by general principles, since the statutes of the state are silent on the subject.

The documents in question are of a public nature, and the rule is that every person is entitled to the inspection of such instruments, provided he shows the requisite interest therein. And, as Lord Denman remarks, in *Rex* v. *Justices of Staffordshire*, 6 *A. & E.* 84, the court is by no means disposed to narrow its authority to enforce by *mandamus* the production of every document of a public nature in which any citizen can prove himself to be interested. For such persons, indeed, every officer appointed by law to keep records ought to deem himself for that purpose a trustee.

The relator asserts no interest to be subserved by an inspection of these letters, except that common interest which every citizen has in the enforcement of the laws and ordinances of the community wherein he dwells.

In England, the occasions which generally have required the exercise of the power of the court to enforce inspection of public documents, have been those where a party has sought evidence for the prosecution or defence of his rights in pending litigation. In such cases, when the custodian of the documents was a party in the cause, the court usually intervened by rule, otherwise by *mandamus*. But the existence of a suit was not a *sine qua non* for the exertion of the power. In *Rex* v. *Lucas et al.*, 10 *East* 235, a *mandamus* was sought to compel the steward of the manor to permit one claiming certain copyhold lands within the manor to inspect the court

rolls and take copies. The lord, claiming himself to be the owner of the lands, resisted, on the ground that there was no cause depending; but the Court of King's Bench granted the writ, notwithstanding the opinion before expressed in *Rex* v. *Allgood,* 7 *T. R.* 742, Lord Ellenborough saying: "I do not know why there should be any cause depending in order to found an application of this sort. This is not the impertinent intrusion of a stranger, but the application of one who is clearly entitled to the copyhold, unless there be a convey-ance of it by those under whom he claims; he may, therefore, well require to see whether there appears upon the rolls to be any such conveyance." So, in *Rex* v. *Tower,* 4 *M. & S.* 162, on a controversy, but without suit, between a tenant of the manor and the lord, as to cutting underwood, the court granted a *mandamus* to inspect the court rolls so far as related to that subject. Likewise in *Rex* v. *Justices of Leicester,* 4 *B. & C.* 891, a *mandamus* was granted that certain ratepayers be allowed to inspect and take copies of the proceedings and documents relating to the parish rates, although no suit was pending; and while this case is disapproved in *Rex* v. *Vestry-men of St. Marylebone,* 5 *A. & E.* 268, and overruled in *Rex* v. *Justices of Staffordshire,* 6 *A. & E.* 84, yet in neither case is it suggested that it was erroneous because no action had been brought. The disapprobation turns upon the principle that the ratepayers had no interest to be subserved by the in-spection, since no information to be obtained from the docu-ments could aid them in the enforcement or protection of any lawful claim. Lord Denman saying, in the case last cited, that the subject matter was not one which the ratepayer could bring before the court as a litigant, and hence there was not that direct and tangible interest which is necessary to bring per-sons within the rule on which the court acts in granting in-spection of public documents. In *Rex* v. *Merchant Tailors' Co.,* 2 *B. & Ad.* 115, although a *mandamus* was refused to members of the company seeking an inspection of *all* the records, books, papers and muniments of the company, be-cause of the generality of the application, it was conceded by

all the judges that if the application had been limited to some legitimate and particular purpose in respect of which the examination became necessary, it would have been allowed, and that there was no rule that to warrant an order to inspect corporation documents, there must actually have been a suit instituted.

It seems, therefore, to be sufficient if the person seeking inspection has such an interest in a specific controversy as will enable him to maintain or defend an action, for which the public documents will furnish competent evidence or necessary information.

Nor is it essential that his interest should be private, capable of sustaining a suit or defence on his own personal behalf. It will justify his demand for inspection, if he may act in such suit as a representative of a common or public right. The cases in England, in which a private subject has secured inspection of public or *quasi* public documents on the ground of being such a representative, are comparatively rare, because of the prevalence of the rule that the civil remedy for wrongs by which no private rights were peculiarly affected was usually in the name of the attorney general acting on behalf of the public. But whenever the subject was, by reason of his relation to the common interest, permitted to litigate for its protection, the right of inspection was fully secured to him. Thus, in *Rex* v. *Shelley*, 3 *T. R.* 141, where some of the burgage tenants were testing by *quo warranto* the right of the defendant to be a burgess, a full inspection of the court rolls, not limited to the evidence of their own titles, was granted them. In *Rex* v. *Babb*, 3 *T. R.* 579, on an information by three aldermen to inquire into the right of Woolmer to be mayor of Great Grimsby, the relators had a rule for the inspection and copies of all the public books, records and papers of the borough of Great Grimsby regarding the subject in dispute. And in the cases of Rex *v.* Justices of Leicester, Rex *v.* Marylebone, Rex *v.* Justices of Staffordshire, and Rex *v.* Merchant Tailors' Co., already cited, the applicants for inspection had no other interest in the matters involved than

such as they shared in common with all the ratepayers of the parish or members of the corporation, but that was not even suggested as a ground for refusing the *mandamus*.

And indeed, upon the reason of the thing, if inspection of public documents will be granted to a private individual when he is seeking merely the furtherance of his own private ends, *a fortiori* should it be accorded to him when he is aiming at the accomplishment of a public purpose, as to which the courts will assist his design through a suit instituted by him in the public behalf.

If, therefore, we would recognize the right of the applicant to maintain a suit on behalf of the public, because of any such violation of or non-compliance with the charter on the part of the collector of taxes, as the relator seeks to discover through the inspection desired, then we should also recognize his right to the inspection, and enforce it by proper process.

The English rule, that the redress of wrongs, arising from usurpations and unlawful acts of public officers, which do not directly affect private persons or property, must be attained through the suit of the attorney general, has not been generally followed in the practice of this state. Indeed it is not uniformly observed in the mother country. Judge Cowen, in *People* v. *Collins*, 19 *Wend.* 56, refers to several instances of its infringement. Naturally, from the more democratic character of our institutions, greater relaxation of the rule would be likely to obtain among us; and accordingly we find that, from an early period, our courts have exercised a large discretion in annulling the illegal acts of municipal bodies and officers, and compelling the performance of their public duties at the instance of citizens and taxpayers who were not otherwise interested in the controversy than was the rest of the community, while the cases in which the attorney general has interfered for such purposes are quite infrequent. In *State, Kean, pros.*, v. *Bronson*, 6 *Vroom* 468, it is said that, in this state, the rule is modified only to the extent that a taxpayer may bring into question the action of municipal authorities, if such action will subject him to a tax in common with his fellow citizens;

and in *State, Montgomery, pros.,* v. *Trenton,* 7 *Vroom* 79, this limit of modification was adopted by a refusal of the court to set aside, at the instance of land owners in the neighborhood, an illegal ordinance granting permission to lay a railroad across a street. Undoubtedly most of the cases where private citizens have sued to prevent or redress public wrongs of municipal authorities, are those involving conduct which would lead to expenditure of public moneys, and so increase taxation, but this has arisen rather from the usual character of such wrongs, than from any reason upon which a remedy would be afforded. There are certainly instances of interference by the courts with official action affecting only public rights at the suit of private persons, where questions of taxation were not at all concerned, or were so remote from the matters complained of as not to be noticed in the decision. Thus, in *State* v. *Justices of Middlesex, Coxe* 244, (1794), the Supreme Court, on a *certiorari* prosecuted by some inhabitants of the county, set aside an election to fix a site for building a county court-house, when the sole ground of complaint was unfairness in conducting the election. In *State* v. *New Brunswick, Coxe* 393, (1795), the court allowed a *certiorari* to test the validity of a municipal ordinance, at the instance of a citizen, without proof that he was or would be peculiarly affected by it. In *State* v. *Griscom et al.,* 3 *Halst.* 136, (1825), a *mandamus* was granted to a private applicant, directing a township committee to assign to the overseers of highways in the township their several divisions of a public road then recently laid out; and in *State* v. *Holliday,* 3 *Halst.* 205, the same relator obtained a writ directing the overseer to whom the road had been then assigned to open it for public use. In *State* v. *Snedeker,* 1 *Vroom* 80, (1862), a citizen sued out a *certiorari* to set aside the action of surveyors vacating a highway, and Vredenburgh, J., said: " Every citizen is interested more or less in every highway, and has a right to submit any questions affecting such interests to the court." In *State* v. *Common Council of Rahway,* 4 *Vroom* 110, (1868,) the council was ordered to appoint a special election to fill a vacancy in the board, on a *mandamus*

issued at the relation of a resident of the ward unrepresented. In *State, ex rel. Mitchell,* v. *Tolan,* 4 *Vroom* 195, it was decided that an inhabitant of a city has sufficient interest to support the right to file an information in the nature of *quo warranto,* testing the legality of an election of aldermen.

These cases seem to indicate that with us the exception to the rule is extended so far as to justify this court in acting by *mandamus, certiorari* or *quo warranto,* at the instance of private persons, for the redress or prevention of public wrongs by public bodies and officers, whose official sphere is confined to some political division of the state, whenever the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights, and the public convenience will be subserved by the remedy desired. The general indifference of private individuals to public omissions and encroachments, the fear of expense in unsuccessful and even in successful litigation, and the discretion of the court, have been, and doubtless will continue to be, a sufficient guard to these public officials against too numerous and unreasonable attacks.

The present controversy relates to a matter of public police of universally recognized importance, concerning a traffic which, in the opinion of many, largely adds to the disorders of society and the burdens of taxation ; and it cannot be alleged that private interests are not as much involved in its due regulation by law as they are in other public questions about which heretofore individuals have maintained a standing in this court. Hence, I think the relator, in his capacity of inhabitant and taxpayer in the city of Orange, has such an interest in the proper observance of the provisions of the city charter for licensing saloons, that he may, under certain circumstances, litigate for its protection, and, in order to ascertain whether those circumstances exist, being actuated by such motives as are disclosed in the present application, he is entitled to an inspection of the letters of recommendation, filed with the collector of taxes, upon which pending licenses were granted.

Let the *mandamus* prayed for be awarded.