THE STATE, EX REL. FRANK J. HIGGINS, v. FRANK T.
LOCKWOOD, CLERK OF THE HUDSON COUNTY BOARD
OF ELECTIONS, AND THE HUDSON COUNTY BOARD OF
ELECTIONS.

Argued at June Term, 1906—Decided July 20, 1906.

The copy of the registry list filed with the county board of election is
a public record, and a writ of *mandamus* will go to the custodians
of such record to compel them to permit a voter to inspect and
copy the same under reasonable regulations.

———

On rule to show cause why a writ of *mandamus* should not
go to respondents directing them to permit the relator to
inspect and take copies of the registry lists used in the fall
election of 1905, in the county of Hudson, and now on file
in the custody of the Hudson county board of election.

Before Justices FORT and REED.

For the relator, *J. Merritt Lane*.

For the respondents, *J. Emil Walscheid* and *James C.
Clark*.

The opinion of the court was delivered by

REED, J.   The relator is a citizen of New Jersey and a legal
voter in Hudson county.  Frank T. Lockwood is clerk of the
Hudson county board of elections, which board is composed
of four citizens of Hudson county.  The testimony taken
to be used upon the return of this rule clearly discloses that
the relator was refused permission to inspect and make copies
of the registration lists in the custody of the Hudson county
board of elections, after another person had been directed
to cease making copies by order of one of the members of
the board.  The intention of at least two members of .this
board of four to forbid such inspection and copying is too

manifest for further discussion. The question is then presented whether Mr. Higgins, as a citizen and voter, has a right to make such inspection and take copies of the said registry lists.

Section 15 of the "Act to regulate elections" (*Pamph. L.* 1898, *pp.* 237, 242) directs that the county board of elections in each county shall cause to be made a complete register of all the legal voters of the respective counties. Section 22 of this act respects the registration in cities of over forty thousand people, and provides that on the day after the completion of the registration of voters one copy shall be delivered by the chairman to the county board of elections, to be filed by them; one copy shall be posted in said district for public inspection, and one copy shall be retained by the judge for use by the district board on the day of election.

In the registration in districts outside of cities of over forty thousand population a copy of the completed register is to be filed with the clerk of the township, city or other municipality within which such election district may be situated; and on the day succeeding the completion of the register a copy is to be delivered to the county board of elections, to be filed by them, as mentioned in respect to the preceding registration.

So in respect to the registration in other municipalities. The provision is that a copy of the revised and corrected register shall be filed with the county board of elections. The registration under the act of 1898 contained the names and residences of the eligible voters of the election district.

In 1903 (*Pamph. L., p.* 603) there was passed a supplement to the preceding statute, which supplement is known as the Primary Election act. This act provides that primaries of all political parties shall be held at the same time; that the elections shall be held substantially as general elections for members of assembly are conducted, with ballot-boxes, official ballots, registry lists and polling-booths. Section 13 of this act enacts that any voter who shall vote in ballot-boxes for one political party at any primary election held under the act shall not be allowed to vote in ballot-

boxes of another political party at the next thereafter suc-
ceeding primary election. It further provides that said board
of registry and election shall indicate on the registry-book
the first letter of the name of the political party—as, for
example, writing the letter "D" for the Democratic party,
the letter "R" for the Republican party and the letter "P"
for the Prohibition party. So it is perceived that since this
act of 1903 came into existence the registry list, in addition
to the names and residences of the eligible voters, has also
opposite the name of such of these persons as voted at the
primary held on the first day of the meeting for registration,
a letter indicating for what party delegate or candidate he
voted at the primary.

The purpose of the required registration of voters is, of
course, to prevent fraudulent voting, and the purpose of the
feature last named is clearly manifest. The purpose is to
prevent persons not affiliated with a political party from
assisting in foisting upon such party undesirable candidates
or candidates not the choice of the party itself.

That the whole scheme for registration, including this fea-
ture, is a matter of concern to every citizen, seems too obvious
for discussion. It seems impossible to think of a matter
which interests every citizen of a representative government
more profoundly than this. And this transcript, for the pres-
ervation of which the legislature has provided, is one upon
which the entire plan of foiling the attempt to vote illegally,
either at a general or a primary election, rests. The con-
tents of this filed paper is of the highest public interest.
That every citizen and voter of Hudson county is concerned
in the manner in which candidates shall be voted for in that
county, and in which candidates shall be selected for popular
election, is manifest. The citizen and voter has certainly
quite as much interest in the contents of these registration
lists as any citizen has an interest in the filed applications
for licenses to sell liquor, the right of a citizen to inspect
which was adjudged in *Ferry* v. *Williams,* 12 *Vroom* 332.

The public character of registration lists and the right
of a citizen to inspect them, when moved by proper motives,

has been adjudged wherever the question has been mooted. *State, ex rel. Thomas,* v. *Hoblitzelle,* 85 *Mo.* 620; *Clay* v. *Ballard,* 87 *Va.* 787.

But it is said that while this may be true as a general rule, yet the relator here, under the policy of our election laws, has no standing to ask for leave to inspect and copy these lists, because the only purpose disclosed is to enable the relator, or someone for him, to challenge the right of those proposing to vote at the next primary. It is pointed out that no one can challenge but members of the election boards or agents appointed by the chairman of the county committee of each political party. Sections 13 and 25 of the act of 1903, *supra.*

But it is to be observed that aside from the right of any voter to equip the challenger with information by which the challenges can be more readily and accurately made, there are other features of the act which require the vigilance of the voter. For instance, section 21 of the act just mentioned provides that a member of one party shall not sign a petition purporting to endorse any person for delegate or candidate for another party. The detection of such an act is not only open to, but a duty cast upon every citizen, and the information offered by the filed registration is an instrument for such detection.

It is also objected that the number of names upon all the registry lists on file with the county board is so numerous that it is impracticable to make copies of them all. So far as appears, however, there does not exist any other copy of the registration lists which can be inspected and copied with less interference with the public service than can those lodged with the respondents. The copy which section 22 of the act of 1898 directs to be posted for public inspection in the place of registration was to be used only for the purpose of the ensuing election, and no provision was made for its preservation after serving that purpose. So of the other copy directed to be retained by the judge of elections for the use of the district board on election day. The only copy directed to be filed is that delivered by the chairman of the election districts to the county board of elections.

It is again objected that the right of the relator or others named by him to inspect and copy the registry lists may result in the alteration of that list by the change of a letter indicating the party. Such danger, however, which exists in some degree when any public record is open to examination by the public, cannot be permitted to defeat the right of inspection. It will, however, induce the court to minimize the danger of any such tampering with this record by surrounding the times and places of inspection with reasonable surveillance.

We think the relator's right to inspect and make copies is entirely clear, but under reasonable regulations—*first,* the inspection and copying should be between the hours of nine o'clock in the morning and five o'clock in the evening, and at times when the boards of election are not in session actually using the books; *second,* that the county board has a right to place some person to guard the books while being copied or inspected, or, if more than three persons are copying, to employ two persons to guard the books, and that the relators shall pay each of the persons so appointed the sum of $3 per day.

The rule to show cause is made absolute.