IN THE MATTER OF THE APPLICATION OF ALDEN M. FREEMAN FOR A MANDAMUS.

Argued November 6, 1907—Decided December 11, 1907.

1. Where a citizen and taxpayer, having an interest only as one of the general public, asks the court, in the exercise of its sound discretion, to allow a writ of *mandamus* to compel its clerk to permit him to inspect and have copies of certain *ex parte* affidavits filed for the purpose of obtaining a rule to show cause why an attorney should not be disbarred, upon the ground that the applicant desired to be informed as to the fitness of the attorney for public office, so that he might intelligently advise the voters of the political party of which he was the county chairman with regard thereto, he ought to show that the issuing of the writ would conduce to that end, and that he himself is actuated by proper motives in making the application.

2. In the present case, it appearing by the affidavits of the petitioner that the *ex parte* affidavits in question were filed twenty-one years before the application, and that the court to which they were presented deemed them insufficient to authorize a rule to show cause in the matter, and that the attorney in question was not at any time called upon to respond to the same, and that from the circumstances developed by the application no good was or is likely to be accomplished by allowing the writ, and that the petitioner was actuated rather by the zeal of the partisan than by a desire solely to promote the public weal, the application was denied.

---

On application for *mandamus.*

Before Justices HENDRICKSON, SWAYZE and TRENCHARD.

For the applicant, *Harry Campton.*

For the clerk of the Supreme Court, *Robert H. McCarter,* attorney-general.

The opinion of the court was delivered by

HENDRICKSON, J. This is an application for a *mandamus* to compel the clerk of this court to permit an inspection of, and to make copies of, certain affidavits filed in 1886, to obtain a rule to show cause why an attorney should not be disbarred.

The court at the time the affidavits were filed seems to have regarded them as insufficient to call for any action by the court. At any rate no rule to show cause was allowed and nothing further was done.

The reason alleged by the petitioner for making his present application is that he desired to be informed if the attorney in question was a fit and proper person to be elected to public office, in order that he might intelligently advise the Independent Citizens' party of Essex county, of which he was the county chairman.

He suggests also that he is interested as a taxpayer in having the state receive the fees which he tendered himself ready to pay for the copies.

Upon the presentation of the petition the usual course was taken of allowing a rule to show cause, and although this was made returnable at the earliest subsequent session of this court, the election of November 5th, 1907, had intervened. The matter was nevertheless brought on for hearing on the *ex parte* affidavits of the petitioner, without objection on the part of the attorney-general, who appeared for the clerk.

It would ordinarily be a sufficient answer to an application for a *mandamus* made under such circumstances to say that the writ would be nugatory and fail to accomplish the end desired by the petitioner. *Goodman* v. *Freeholders of Sussex,* 37 *Vroom* 571. Cases in other jurisdictions are collected in 26 *Cyc.* 149. But inasmuch as the petitioner moved promptly and the lapse of time was unavoidable, owing to the vacation of the court and the fact that no session intervened before the

annual election, we think the attorney-general very properly did not urge this objection.

We do not accede to the view that the affidavits are not public records. . Although no proceedings were had thereon, they were the proper foundation for an application to the court, are found among its files, and would be sufficient to serve as the basis of an indictment for perjury if willfully false. We must assume, in the absence of evidence, that they were filed by order of the court after the application for a rule upon the attorney had been denied, in order that proper proceedings might be taken against the affiants if the affidavits were false. Such papers are unlike those that are entirely outside of any judicial proceedings and only casually placed among the files of the court.

The right of a citizen to inspect public records, in the absence of a statute authorizing such inspection, has been the subject of at least two decisions by this court.

In *Ferry* v. *Williams,* 12 *Vroom* 332, the right to inspect recommendations for saloon licenses was vindicated after a careful analysis of the authorities upon the ground that any citizen in his capacity as a taxpayer had such an interest in the proper observance of the provisions of the city charter for licensing saloons, that he might, under certain circumstances, litigate for its protection, and in order to ascertain whether those circumstances existed, he was entitled, when actuated by the motives shown in that case, to the inspection sought.

This decision limited the right to cases where the inspection was necessary as an aid in litigation which the petitioner was entitled to maintain.

The right under the English practice seems to have been thus limited, but we have extended it further. In *Higgins* v. *Lockwood,* 45 *Vroom* 158, it was held by this court that a voter was entitled to a *mandamus* to secure an inspection of registry lists for an election, although his only interest was as a voter, and no litigation was intended to which the inspection might be an aid.

Both of these cases recognized the necessity that the motives of the petitioner be proper, and in the earlier case this court

expressly said that the discretion of the court in granting writs of *mandamus* was one of the safeguards to protect public officers against too numerous and unreasonable attacks.

Although the issue of the extraordinary writ of *mandamus* rests in the sound discretion of the court, yet that discretion is exercised according to well settled principles. *Clarke* v. *Trenton,* 20 *Vroom* 349, 355.

When, as in this case, the only right of the petitioner is his interest as one of the general public in securing the nomination and election to public office of proper men, he ought to show that the issue of the writ would conduce to that end and that he himself is actuated by proper motives. The courts ought to lend their aid in such a case, but they ought not to lend it where the information sought cannot be helpful for the ostensible purpose or where the petitioner's motive is partisan hostility or personal ill will. In this case the petitioner seeks to secure an inspection and copies of *ex parte* affidavits made twenty-one years ago, which, as this court at the time thought, failed to present even a *prima facie* case against the gentlemen assailed thereby. We have not been favored with a statement of the charges supposed to be contained in the affidavits, nor have we examined the affidavits themselves; but assuming everything that the petitioner suggests, we fail to see how charges, made so long ago, and of so little importance in the view of the court, can assist any voter in deciding as to the fitness for public office twenty-one years thereafter, of a gentleman who has never had the opportunity to meet them, and as far as this case shows, has never been made aware even of their existence.

To allow their publication after so long a time might work a very serious injustice without any counter-balancing good.

The failure of the court to act originally must have been due either to the insignificance of the charges themselves or to the unsatisfactory character of the proof in support of them. They must have been of little consequence when it was not thought worth while even to issue a rule to show cause. We think the petitioner has failed to show that any good was or is likely to be accomplished by allowing the inspection he seeks.

The alleged interest of the petitioner in the increase of the state's revenue by the fees he tenders himself ready to pay for the copies is purely pecuniary, and we think the petitioner is hardly frank in this respect, since the fees he would have to pay are necessarily many times greater than any possible share he can have as a taxpayer in the receipts of the clerk's office.

It is perhaps too much to say that the application is not made in good faith for the public ends which are its ostensible object. But the petitioner seems to have been informed of the charges in other ways and could, on that information, have formed his opinion as to the merits of the candidate, and could have advised, if indeed he did not advise, the party of which he was the official head; and the pressing of the application after election when it could not possibly be of any benefit for the purposes set forth in his petition, indicates that he was actuated rather by the zeal of the partisan than by a desire solely for the public weal.

It was held by the Supreme Court of California, in a case quite similar, that such charges do not necessarily become a public record to which any citizen may have access at pleasure, and that a *mandamus* will not lie to compel the custodian of a public record to allow it to be inspected by a citizen of the state, unless the applicant has a beneficial interest in the examination. *Colnon* v. *Orr,* 71 *Cal.* 43; 11 *Pac. C. L. J.* 814.

It was also held in *Thomas* v. *Hamilton,* 101 *Mich.* 387; 59 *N. W. Rep.* 658, that a *mandamus* will not lie at the instance of a private individual to compel a druggist to allow the relator to examine the record of sales of liquor which the druggist was required by the statute to keep, the same to be open for examination to all persons during business hours, unless he had some private or particular interest to be subserved or some particular right to be preserved or protected by such process independent of that which he holds in common with the public at large.

The result is that the application must be denied, with costs.