THE STATE, EX REL. MARK M. FAGAN, v. STATE BOARD OF ASSESSORS.

Argued June 9, 1910—Decided October 26, 1910.

A citizen who is also a member of a county board of taxation is entitled for purposes connected with his official duties, or arising out of his rights as a citizen, to inspect the schedules filed in pursuance of public law in the office of the state board of assessors.

On rule to show cause why a writ of *mandamus*, alternative or peremptory, should not issue, directed to the state board of assessors and the clerk of the state board of assessors directing them and each of them to permit the relator at proper times and places and under proper supervision to examine and take copies of the records and returns of the various railroad and other companies mentioned in the affidavit filed with them and holding property in the county of Hudson.

Before Justices GARRISON, SWAYZE and VOORHEES.

For the rule, *Merritt Lane.*

*Contra, Edmund Wilson,* attorney-general.

The opinion of the court was delivered by

GARRISON, J. Upon the principles laid down by this court in the case of *Ferry* v. *Williams,* 12 *Vroom* 332 (opinion by

Mr. Justice Dixon, 1879), the present application should be granted. Every general principle on which this court acted in that case is applicable to this; to rehearse them would be to reprint Mr. Justice Dixon's opinion. I am at a loss to see upon what ground, not covered by the case cited, the defendant can claim that these schedules are of a confidential nature or possessed of any private character that was not possessed by the recommendations for liquor licenses filed with the collector of taxes in the case of Ferry *v.* Williams. In each case the document was one required by public law to be made for a public purpose and to be lodged with a public officer as the basis of the performance of a public duty in which all citizens had an interest. These were the pertinent conditions to which the general principles enunciated by Mr. Justice Dixon were applied in the case cited. They all exist in the present case, which is indeed the stronger of the two by as much as matters of taxation concern the citizens more universally than does the local licensing of inns and taverns. In either case, what is there of a confidential character about these records or on what can the public officers base their claim of privacy? I can readily see how a railroad company that had for its own purposes prepared such a schedule of its taxables for the information of its stockholders or of investors might successfully resist the requests of the taxing officers to inspect such list upon the ground that it was a private memorandum, the contents of which, in the absence of appropriate legislation, possessed no public character and was of no public concern. Here, however, there is appropriate legislation that covers both of these objections and gives to such reports a definite public aspect and clothes them with a distinct public interest. If the objections of the companies are thus answered, it does not seem to lie with the taxing officers to set up a right of privacy that if it existed does not appertain to them. The attorney-general, who appears for the state board of assessors, concludes his brief with a summary of his contentions under two heads —*first,* that the records are not made public records by statute, and *second,* that their inspection is not necessary for the purposes outlined by the relator. The first of these arguments

was met in Ferry *v.* Williams by the declaration that whether or not the relator had the right of inspection, "must be decided upon general principles, since the statutes of the state are silent upon the subject." This is true of the present case. The second argument is not sound in point of fact. A consideration of the statutory duties involved makes it clear that the information contained in these schedules in view of its relation to the duty of the state board on the one hand (*Long Dock Co.* v. *State Board of Assessors,* 49 *Vroom* 44), and of the county boards on the other, makes it highly expedient that the same public information should be accessible to and be acted upon by each. Absolute necessity is not required; it is enough if it be clearly expedient for the public good. We entirely agree with the learned attorney-general that "the application must be made upon the basis of utility and not upon idle curiosity," and we have had no difficulty in reaching the conclusion that the present application is so based. As a member of the Hudson county board of taxation the relator has a right amounting to a public duty to make himself acquainted with the contents of these records of the state board of assessors as an aid that may be indispensable to the proper and complete administration of his public office. As a citizen and a taxpayer he has that abiding interest in the administration of his government and of every department of it that affects him or his fellows that marks the difference between a citizen and a subject. It is to the failure of the citizen to assert these rights that we must look for those evils that are incident to our form of government rather than to a superabundant zeal in this respect. It would be unfortunate in the extreme for the courts of a republic to erect technical barriers by which these duties of citizenship were discouraged or denied; and no more effectual barrier could be set up than the rule that records required by public law for the performance of their public duties by public servants are possessed of a privacy into which the mere citizen, however patriotic his purposes, may not inquire.

The rule to show cause is made absolute, and there being no controversy as to the facts, a peremptory *mandamus* is allowed.