This is a motion for summary judgment to compel the defendant, under the authority of Rule 3:81-4, to supply a list of registrants whose registrations were filed with the defendant after March 10, 1949, and up to March 31, 1949.
The complaint is brought by the plaintiff as a citizen, taxpayer, and voter of the City of Jersey City, and it is conceded that he is a citizen, taxpayer, and voter of such city.
It is also brought in his capacity as a member of the Board of Commissioners of the City of Jersey City and Director of the Department of Public Safety of that city, and as a candidate for election to the Board of Commissioners of the City *Page 621 
of Jersey City at the municipal election to be held in said city on May 10, 1949.
The relief prayed is a summary judgment ordering and directing the defendant, Superintendent of Elections and Commissioner of Registration of the County of Hudson, to furnish to the plaintiff and his authorized representatives forthwith a list of the names and addresses of the registrants before mentioned or, in the alternative, to permit the plaintiff and his authorized representatives to inspect and copy the duplicate registration forms of such registrations for permanent registration. The registration forms in question are public records. See RevisedStatutes 19:31-10.
The question at the outset to be determined is the right of this plaintiff in one or more of his several capacities to demand of the defendant a list made up from such public records of the lists of the names of the registrants or, in the alternative, to examine and inspect such public records.
The common law right of an interested citizen to an inspection of public records has been the subject of discussion by our courts in a number of cases, and the most recent is a case decided March 16, 1949, by Part A of the Appellate Division of the Superior Court, entitled Taxpayers Association of Cape May,New Jersey, Inc., et al., Plaintiffs, v. City of Cape May et al.,defendants, 64 A.2d 453. In the opinion handed down in that case Judge Jacobs, writing the opinion, collected the cases which discuss this question in our state. The leading case is Ferry v.Williams, 41 N.J.L. 332, where the court, after reviewing the English authorities and disavowing suggested limitations, sustained the right of a taxpayer to an inspection of applications for liquor licenses for the purpose of ascertaining whether they had been granted in accordance with law. The application for inspection in that instance was resisted on the ground that the applicant was an advocate of national prohibition and that the purpose to which he would put the information was not legitimate. The court, allowing the inspection, expressly stated that the interest of the applicant as a taxpayer was sufficient even though he had no interest except that common interest which every citizen has in the enforcement of the *Page 622 
laws and ordinances of the community wherein he dwells. The court went on to say at page 339, that:
"The present controversy relates to a matter of public policy of universally recognized importance, concerning a traffic which, in the opinion of many, largely adds to the disorders of society and the burdens of taxation; and it cannot be alleged that private interests are not as much involved in its due regulation by law as they are in other public questions about which heretofore individuals have maintained a standing in this court. Hence, I think the relator, in his capacity of inhabitant and taxpayer in the city of Orange, has such an interest in the proper observance of the provisions of the city charter for licensing saloons, that he may, under certain circumstances, litigate for its protection, and, in order to ascertain whether those circumstances exist, being actuated by such motives as are disclosed in the present application, he is entitled to an inspection of the letters of recommendation, filed with the collector of taxes, upon which pending licenses were granted."
This case was followed by Higgins v. Lockwood, reported in74 N.J.L. 158. That was an application for a writ of mandamus by one Higgins to compel the clerk of the Hudson County Board of Elections to permit him to examine the registry records of the County of Hudson. The court, in granting the application, stated this:
"The purpose of the required registration of voters is, of course, to prevent fraudulent voting, and the purpose of the feature last named is clearly manifest. The purpose is to prevent persons not affiliated with a political party from assisting in foisting upon such party undesirable candidates, or candidates not the choice of the party itself.
"That the whole scheme for registration, including this feature, is a matter of concern to every citizen, seems too obvious for discussion. It seems impossible to think of a matter which interests every citizen of a representative government more profoundly than this. And this transcript for the preservation of which the Legislature has provided, is one upon which the entire plan of foiling the attempt to vote illegally, either at a general or a primary election, rests. The contents of this filed paper is of the highest public interest. That every citizen and voter of Hudson county is concerned in the manner in which candidates shall be voted for in that county, and in which candidates shall be selected for popular election is manifest. The citizen and voter has certainly quite as much interest in the contents of these registration lists, as any citizen has an interest in the filed applications for licenses to sell liquor, the right of a citizen to inspect which was adjudged in Ferry v.Williams, 12 Vroom 332."
And the reason for the rule is obvious; but, of course, it is not without its limitations. The reason is referred to in *Page 623 
the case of Fagan v. State Board of Assessors, 80 N.J.L. 516,77 A. 1023, in which our old Supreme Court, speaking through Mr. Justice Garrison, said:
"As a citizen and a taxpayer, he has that abiding interest in the administration of his government and of every department of it that affects him or his fellows that marks the difference between a citizen and a subject. It is to the failure of the citizen to assert these rights that we must look for those evils that are incident to our government rather than to a superabundant zeal in this respect. It would be unfortunate in the extreme for the courts of a republic to erect technical barriers by which these duties of citizenship were discouraged or denied; and no more effectual barrier could be set up than the rule that records required by public law for the performance of their public duties by public servants are possessed of a privacy into which the mere citizen however patriotic his purpose may not inquire."
In the recent decision before mentioned, Taxpayers Associationv. City of Cape May, Judge Jacobs said:
"Although we believe that in furtherance of good government the right of interested citizens and taxpayers to inspect public records should be broadly recognized, we need not here attempt to define its precise scope and limits. We are satisfied that under the special circumstances presented the interest of the taxpayers and citizens is sufficient to sustain their application. Their motives are good; they are vitally concerned with the threatened tax increase and are seeking information which may support demands for increased governmental efficiency and affirmative action for the elimination of any existing official abuses; they have incurred considerable expense and have completed a substantial part of their inspection; they will not endanger the safety of the records or interfere with the public business; and they will confine themselves to an examination of documents which are admittedly public records. The public policy in favor of their position is strong and no counterbalancing considerations have been advanced by the defendants. Indeed, their sole contention is that recognition of a taxpayer's right to a general inspection might result in a flood of proceedings which will hamper the conduct of the public business. This, however, is readily met by the power of the trial judge to impose appropriate restrictions as was done here and, indeed, by his wide discretion to deny all relief either in the public interest * * * or because of the plaintiff's bad motives * * * or for other just cause."
This plaintiff is a candidate for the office of Commissioner of the City of Jersey City and I may infer from the fact that he is a candidate he has a legitimate interest in ascertaining that only those who legitimately have a right to vote in the *Page 624 
municipal election shall in fact vote at that election. There is nothing before me which shows that his purpose, if his right to this inspection is limited to his interest as a candidate, is improper. I feel that as a candidate he is entitled to make an inspection of these records under appropriate regulations, the details of which can be determined at the time the order entered herein is settled.
However, his application to have the information gained on inspection of the records turned over to the Police Department of the City of Jersey City for investigation raises different considerations.
The general principle of the right of any citizen and taxpayer to inspect and have access to public records when such inspection and access can be had without undue interference with the conduct of public business is qualified not only by the right in the judicial discretion of the trial judge to deny the inspection or access when the motive is improper but also is qualified by any enactments by the legislature which may bear upon his right of use of the information which he gains through the inspection or access. The statute, and the only statute which my own research and that of counsel for both parties have found, is Chapter 347
of the Laws of 1947. That statute by its provisions requires that on or before the Monday following the fourth Tuesday preceding the general election the Commissioner of Elections shall certify to the county clerk a complete list of all persons registered in each election district and that the county clerk, upon receipt of such certified list, shall distribute copies thereof in the manner provided by section 2, including a copy which the statute says the county clerk shall forthwith deliver to the Chief of Police, Superintendent of Elections, if any there be, and the municipal clerk of each of the municipalities in the county for which the lists have been printed. Section 3 of the statute requires the Chief of Police upon receipt of such lists from the county clerk to cause an investigation to be made of the names of the persons so appearing on such lists. It is clear that the legislature has required an investigation by the Chief of Police of a municipality only in respect of the registry lists prepared for the *Page 625 
general election and submitted to the county clerk on or before the Monday following the fourth Tuesday preceding the general election.
I don't consider that Revised Statutes 19:1-2 has the effect of making this provision applicable to lists prepared and to be used in connection with municipal elections of the kind involved in this proceeding. Thus, I conclude that, the legislature having specified the circumstances and situation under which the offices of the Chief of Police are to be employed for the purposes of investigation, within the judicial discretion required to be exercised by me in a proceeding of this kind, the Chief of Police should not be permitted to have the information which will be obtained on the inspection by the plaintiff herein for the purpose of any investigation by the Chief of Police.
I, accordingly, shall enter an order granting a summary judgment to require the defendant to permit the plaintiff and his authorized representatives an inspection, on conditions to be included in the order to safeguard the conduct of the public business by the defendant and shall also include in such order a provision expressly enjoining the plaintiff from turning over any of the information obtained on such inspection to the Chief of Police or other police authorities of the City of Jersey City for the purposes of investigation or otherwise.
Submit an order. I will hear you on the date when you would like to present it. *Page 626