83 N.J. Super. 293 (1964)
199 A.2d 656
ACCIDENT INDEX BUREAU, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-PETITIONER,
v.
RICHARD J. HUGHES, GOVERNOR OF THE STATE OF NEW JERSEY, RAYMOND F. MALE, COMMISSIONER OF THE DEPARTMENT OF LABOR AND INDUSTRY, AND THOMAS L. FRANKLIN, OF THE DIVISION OF WORKMEN'S COMPENSATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1964.
Decided April 17, 1964.
*294 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Edward B. Meredith argued the cause for plaintiff-petitioner (Messrs. Meredith & Meredith, attorneys; Mr. Edward B. Meredith, of counsel).
Mr. William L. Kirchner, Jr., Deputy Attorney General, argued the cause for defendants-respondents (Mr. Arthur J. Sills, Attorney General, attorney; Mr. Kirchner, of counsel).
The opinion of the court was delivered by KILKENNY, J.A.D.
Plaintiff's petition for a declaratory judgment asks us to adjudge and declare unconstitutional and void (1) L. 1963, c. 73, N.J.S.A. 47:1A-1 et seq., "The Right to Know Law"; (2) the second sentence of paragraph one and the whole of paragraph two of Executive Order No. 9, effective October 1, 1963; and (3) the regulation of the Commissioner of Labor and Industry, dated July 31, 1963 and effective October 1, 1963. Plaintiff also prays that the Commissioner be permanently enjoined from the enforcement of such regulation and that it may be granted such other and further relief as may be proper and just.
*295 By L. 1963, c. 73, effective July 1, 1963, the Legislature declared "it to be the public policy of this State that public records shall be readily accessible for examination by the citizens of this State, with certain exceptions, for the protection of the public interest." All records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the State or of any political subdivision thereof, or by any public board, body, commission or authority created pursuant to law by the State or any of its political subdivisions, or by any official acting for or on behalf thereof, are, subject to the exception hereinafter noted, deemed under this law "to be public records." Excepted from the citizen's right to inspect and copy are those public records otherwise provided for by statute, resolution of either or both houses of the Legislature, executive order of the Governor, rule of court, any federal law, regulation or order, or by any regulation promulgated under the authority of any statute or executive order of the Governor.
L. 1963, c. 73 provides that any citizen of this State who has been or shall have been denied for any reason the right to inspect, copy or obtain a copy of any such record, to whose inspection he is entitled, "may apply to the Superior Court of New Jersey by a proceeding in lieu of prerogative writ for an order requiring the custodian of the record to afford inspection, the right to copy or to obtain a copy thereof, as provided in this act."
The Governor's Executive Order No. 9, after reciting in its preamble that L. 1963, c. 73 represents a right supplemental to the existing common law right of the public to examine and copy public records, subject to the limitation that exercise of the right is "not detrimental to the public interest," specifies certain named records in paragraph 3 of the order which shall not be deemed to be public records subject to inspection. We are not concerned herein with those specific records. However, the Governor's order, particularly in paragraph 2, authorized and empowered the head or principal executive of each principal department of State Government, *296 with respect to the records of his department and any agencies, authorities and commissions assigned or allocated to such department or under its supervision, to adopt and promulgate, from time to time, regulations setting forth which records under his jurisdiction shall not be deemed to be public records, subject to inspection and available for copying, pursuant to the provisions of L. 1963, c. 73. The second sentence of paragraph 1 of this executive order provided that such records, so covered by departmental regulation, shall not be deemed to be public records.
Acting upon the authority vested in him by Executive Orders Nos. 7, 8 and 9, the Commissioner of Labor and Industry adopted and promulgated a regulation, effective October 1, 1963, the challenged portion thereof reading as follows:
"The following records shall not be deemed public records, copies of which may be purchased or reproduced under the provisions of Chapter 73, P.L. 1963:
a. All records required by statute to be made, maintained or kept on file pursuant to the provisions of the Workmen's Compensation Law, R.S. 34:15-1 et seq., if the purpose of the inspection or copying is to provide employers with information concerning prospective employees." (Italics ours)
This 1963 regulation had a history. Plaintiff has for several years conducted a business which it styles "An Independent Research Service Dedicated to the Prevention and Reduction of Accidents in Industry and on the Highways." In 1958, or prior thereto, it published and circulated an advertising brochure entitled, "How Much Do You Really Know About the Man You Are About to Hire?" This publication advised employers of the costly mistakes of hiring persons "whose record of physical disabilities and mental handicaps disqualifies them for the jobs to which they have been assigned." It noted that "all too often the employer finds that he has unwittingly put on his payroll a workmen's compensation `professional.' It is only when an injury is reported and a claim filed that the hapless employer finds that he has `been taken.' Then it is too late." It solicited insurance companies *297 and employers for membership at an annual fee of $25 and, for a report charge of only $5, engaged that it would furnish "a complete history of previous injuries and claims by any individual."
On March 26, 1958 the Attorney General took note of plaintiff's brochure and rendered an opinion, at the request of the then Commissioner of Labor and Industry, in which he stated that the Commissioner could refuse to permit plaintiff to search the records of the Division of Workmen's Compensation "where the purpose of the search is to provide employers with information concerning prospective employees." The rationale of that conclusion is summed up in the following language of the opinion:
"No person can lawfully do that which has a tendency to be injurious to the public or against the public good. * * * The service as outlined by Accident Index Bureau, Inc. is designed to discourage the employment of the handicapped and would frustrate the efforts of the Department of Labor and Industry to effectuate the policy of this State concerning industrial injuries and employment of the handicapped."
On September 23, 1958 the executive vice-president of the New Jersey State Council of the C.I.O. wrote a letter to the then Director of the Division of Workmen's Compensation, therein called attention to plaintiff's aforesaid brochure, complained that plaintiff's operation was influencing employers to reject applicants for employment who had previously sustained compensable injuries and questioned whether the Division should permit plaintiff to inspect the workmen's compensation files.
Despite this letter and the Attorney General's opinion, plaintiff was not prohibited from inspecting and copying workmen's compensation records for reports to prospective employers prior to October 1, 1963, when the departmental regulation now under review became effective. The present Director of the Division of Workmen's Compensation advised plaintiff's Mr. Grosman, by letter of October 29, 1963, that inspection of the Division's records would not be permitted *298 "where the purpose of inspection of our records is to furnish an employer with information concerning prospective employees," but no one would be subject to the restriction where the purpose of inspection was other than that. On December 13, 1963 the Director issued a directive requiring persons searching the records to represent in writing that their purpose is not to supply employers with information concerning prospective employees.
Workmen's compensation records are required by law to be made, maintained and kept on file. N.J.S.A. 34:15-58. The Secretary of the Bureau is required by law to file the record of each case left with him by the official conducting the hearing, and to "keep a card index of such record in such manner as to afford ready reference thereto. Such records shall be open to the inspection of the public." (Italics ours). R.S. 34:15-59. Hence, there can be no doubt that, by express legislative pronouncement, they are essentially "public records," in the same general category as judgment records of courts of law. For a definition of a "public record," see Moore v. Bd. of Freeholders of Mercer County, 76 N.J. Super. 396, 406-407 (App. Div. 1962), modified 39 N.J. 26 (1962); Josefowicz v. Porter, 32 N.J. Super. 585, 591 (App. Div. 1954); 76 C.J.S., Records, § 1, p. 112; N.J.S.A. 47:3-16.
The right of a citizen to inspect public records has never been an unlimited one. Rex v. Shelley, 3 T.R. 141 (K.B. 1789); Ferry v. Williams, 41 N.J.L. 332 (Sup. Ct. 1879); In re Freeman, 75 N.J.L. 329 (Sup. Ct. 1907); Moore v. Bd. of Freeholders of Mercer County, supra, 76 N.J. Super., at p. 407. The right to inspect public records has been subject to the requirement of a lawful, proper and legitimate purpose not adverse to the public interest. Cross, The People's Right to Know (1953), p. 36; Taxpayers Association of Cape May, New Jersey v. City of Cape May, 2 N.J. Super. 27, 31 (App. Div. 1949); Casey v. MacPhail, 2 N.J. Super. 619, 624 (Law Div. 1949). Thus, the inspection may not interfere with the performance of official duties. Taxpayers *299 Association of Cape May, New Jersey v. City of Cape May, supra, 2 N.J. Super., at p. 29; Casey v. MacPhail, supra, 2 N.J. Super., at p. 624. So, too, it has been properly said, "There is no right of inspection of a public record when the inspection is sought to satisfy a person's mere whim or fancy, to engage in a pastime, to create scandal, to degrade another, to injure public morals, or to further any improper or useless end or purpose." State v. Harrison, 130 W. Va. 246, 250, 43 S.E.2d 214, 218 (Sup. Ct. App. 1947). Even L. 1963, c. 73, "The Right to Know Law," declaratory of the State's public policy that public records shall be readily accessible for examination by the citizens of this State, expressly notes "the protection of the public interest" as an exception thereto.
The solicitude of our State for those disabled and handicapped by industrial accidents is understandable and commendable. The Workmen's Compensation Act itself and the liberal interpretation of this remedial legislation by our courts attest to that solicitude. Morris v. Hermann Forwarding Co., 18 N.J. 195, 197-198 (1955). The provisions in the law for the rehabilitation of the physically handicapped for placement in remunerative employment, N.J.S.A. 34:16-20 et seq., and the creation of the One Percent Fund, N.J.S.A. 34:15-94 et seq., to encourage the hiring of the handicapped, evince our public policy to help rather than hinder the disabled in their search for employment. Richardson v. Essex National Trunk and Bag Co., Inc., 119 N.J.L. 47, 52 (E. & A. 1937); Wexler v. Lambrecht Foods, 64 N.J. Super. 489, 501 (App. Div. 1960).
But this noble purpose will not justify the State's precluding employers from ascertaining the prior workmen's compensation history, if any, of prospective employees. The proper placement of the disabled and handicapped in positions suitable to their physical capabilities should be a matter of grave concern to a conscientious employer. Existing disabilities can be easily aggravated and dormant physical conditions can flare into activity, with serious consequences to the worker *300 and the employer, if the worker is given duties to perform beyond his physical capacities or is required to perform them under conditions adverse to some underlying ailment. So, too, an employer has a right to protection against the fraudulent claimant, who is not entitled to the State's benignity.
Defendants do not contend that an employer is not entitled to the information concerning a prospective employee's previous workmen's compensation history. Indeed, an employer could ask the prospective employee to furnish that information completely in his application for employment. Five minutes after the applicant had been placed on the payroll, the employer could avail himself of plaintiff's services and plaintiff could inspect and copy the workmen's compensation records without violating the regulation, because it is limited to "prospective employees." Thus, the regulation discriminates unreasonably between an employer who seeks the information immediately before the hiring and one who seeks the same information, through the same service, immediately after the hiring. A deceived employer would not be likely to retain his deceiver in his employ. Such an illusory regulation would only serve to expose an employer to the risk of a workmen's compensation claim in the short interval while the fraud was being uncovered.
Defendants tell us that they take no position in this litigation "as to the right of prospective employers themselves to come in and inspect these records on their own initiative." They regard the regulation in issue as being directed more particularly against plaintiff's commercial enterprise "which affirmatively and aggressively places this information under the noses of prospective employers who might not otherwise have considered it significant in their hiring policies." It is significant to note at this point that plaintiff does not make a report as to the workmen's compensation history of an individual, unless and until the prospective employer specifically requests that information.
The reluctance of the Commissioner of Labor to take a position as to whether his own regulation prohibits employers *301 themselves from inspecting workmen's compensation files of prospective employees points up the dubious, illusory and arbitrary nature of the regulation. If an employer may not look at these records for the legitimate purpose of selection and placement of employees, the State would be unjustifiably depriving him of his right to know facts essential to his economic interest, contained in public records which the Legislature has expressly declared shall be open to public inspection. R.S. 34:15-59. It is fair to assume that the Legislature did not intend the 1963 "Right to Know Law" to take away by an administrative regulation a right which employers had enjoyed prior to adoption of the 1963 act. We are satisfied that the Legislature did not contemplate that this liberal legislation would serve as a basis for a departmental regulation which would literally pull the wool over the eyes of prospective employers, even in aid of the State's policy to help the handicapped. Sound public morality does not subscribe to the rule, "The end justifies the means."
On the other hand, if we assume that employers themselves are not precluded by this regulation from inspecting workmen's compensation files of prospective employees, it follows that they may, and in the case of corporate employers must, deputize some alter ego to make the inspection for them. It would be arbitrary and discriminatory for the Commissioner of Labor to permit one prospective employer, or his agent, to make the inspection and to deny the same right of inspection to another employer, merely because the latter sought the same information through the medium of plaintiff's services. If the right to inspect is made to turn upon whether the inspector is an "agent" of the prospective employer, rather than an authorized "independent contractor," it is obvious that such an arbitrary distinction could be readily annihilated by the employer's designation of plaintiff as its "agent" for the purpose of inspection. Thus, the regulation reduces itself to an absurdity and contravenes substantive due process of law. It would serve no good and remedy no evil under such a flexible makeup. Its only raison d'etre would be discrimination *302 against plaintiff and similar organizations rendering services for, and at the request of, employers.
We appreciate the proper concern of defendants and organized labor for helping the disabled and handicapped to obtain gainful employment and the important public interest involved in achieving that objective. But that objective cannot be legitimately advanced or soundly accomplished by taking advantage of unwary and uninformed employers. At the same time, we do not, in declaring the regulation in issue invalid, place our imprimatur upon the contents of plaintiff's brochures. This scare-type advertising has a tendency to be unduly alarming and disserves the public policy of encouraging employers to hire the disabled. There is an emphasis upon the "professional" workmen's compensation claimant and an inadequate counterbalance of information in favor of the honest, but unfortunate victims of industrial accidents. However, we are not called upon herein to determine the propriety of plaintiff's advertising methods, or its constitutional right of freedom of speech and of the press in soliciting business by means thereof. We decide only that the challenged regulation is invalid for the reasons noted above.
It is axiomatic that courts will not decide constitutional issues not necessary to the disposition of the case before them. Ashwander v. T.V.A., 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936); Rottschaefer on Constitutional Law (1939), p. 26; Weaver, Constitutional Law (1946), p. 69. For that reason, having determined that the regulation of the Commissioner of Labor and Industry is invalid and, therefor, dispositive of the case before us, we deliberately refrain from passing upon the other constitutional issues raised by plaintiff, namely, the constitutionality of the underlying statute, L. 1963, c. 73, and Executive Order No. 9.
We adjudge and declare the challenged regulation of the Commissioner of Labor and Industry, dated July 31, 1963 and effective October 1, 1963, to be invalid and unenforceable.