90 N.J. Super. 233 (1966)
217 A.2d 22
THEODORE GUARRIELLO AND ELLEN FLACH, PLAINTIFFS,
v.
WILLIAM BENSON AND JACOB FLAKER, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 31, 1966.
*234 Mr. Carmen A. Ferrante for plaintiffs (Messrs. Harrison & Ferrante, attorneys).
Mr. Arthur Troast for defendants (Messrs. Troast, Mattson & Madden, attorneys).
SCHNEIDER, J.C.C. (temporarily assigned).
This is an action in lieu of prerogative writs brought by plaintiffs in an *235 attempt to compel Jacob Flaker, the Township Clerk of Wyckoff, to make available certain tape recordings of hearings held by the municipality of Wyckoff at the request of the Northwest Bergen County Sewer District, for the purpose of re-recording said tapes. The action against William Benson, the mayor, was dismissed prior to trial. Counsel for the parties have stipulated that any resident of the town is free to hear the tapes and that typed transcripts of any of the four hearings could be made from the tapes. Further,
"This suit does not seek the right to hear the tapes or the right to obtain typed or printed copies of what the tapes contain, but rather is limited expressly to the right to rerecord the tapes."
In addition, the parties have stipulated to the following facts. By resolution adopted July 23, 1952, the Board of Chosen Freeholders of Bergen County, New Jersey, established the Northwest Bergen County Sanitary Sewer District as a sewerage district under and pursuant to an act of the Legislature known as chapter 123 of the Laws of 1946, as amended, N.J.S.A. 40:36A-1 et seq. Pursuant to said act and resolution there was created for said sewerage district, the Northwest Bergen County Sewer Authority ("Authority"), and thereafter the board of freeholders duly appointed commissioners for the Authority. The sewer district consists of the territory of 16 municipalities located within Bergen County.
Pursuant to the act the Authority caused to be prepared a project report covering its initial stage of construction, which contemplated serving six municipalities, including the Township of Wyckoff. Some time in 1963 the Authority, through its commissioners, requested permission of the governing body of the Township of Wyckoff to hold hearings in that township so as to provide an opportunity to the Authority to explain the proposed project to the residents of the township. The Wyckoff Township Committee advised the Authority commissioners that it had no objection to such hearings being held within the Township of Wyckoff. Thereafter, hearings *236 were held on four different occasions at four different locations so that the residents in different parts of the township could conveniently attend the hearings. The hearings were open to the public. Tape recordings were made at the hearings, and the tape recordings are in the custody of the township clerk.
On October 22, 1963 Robert Flach, the husband of one of the plaintiffs, appeared at the office of the Wyckoff Township Clerk Flaker in the township municipal building and requested permission to re-record the tapes of the hearings held by the Northwest Bergen County Sewer Authority. Although the township clerk was willing to permit Mr. Flach to listen to the tapes, he declined to permit a re-recording. The Wyckoff Township Committee, by resolution, has declared it to be the policy of the township that the tapes in question be made available to any resident desiring access to the same. The resolution further directs the township clerk to play the tapes for any resident requesting to hear the same and to prepare typed transcripts of any such hearings for any resident desiring the same and willing to pay the reasonable cost thereof. The township committee also determined as a matter of policy that the tapes should not be made available for re-recording by residents of the township.
The court must first be satisfied that these tapes are public records. For if they are not, then a fortiori plaintiff would have no right under the circumstances to hear or copy them.
The term "public record" was defined in Moore v. Bd. of Freeholders of Mercer County, 76 N.J. Super. 396 (App. Div. 1962), modified 39 N.J. 26 (1962). The court in Moore looked to N.J.S.A. 47: 3-15 et seq., known as the Destruction of Public Records Law (1953), for a definition of the term. Although this statute only defines public records for the purpose of the act, it has been regarded by the courts as a good working definition of the term. Public records are
*237 "* * * any paper, written or printed book, document or drawing, map or plan, photograph, microfilm, sound-recording or similar device * * * which has been made * * * by any officer, commission, agency or authority of the State * * * and has been retained * * * as evidence of its activities or because of the information contained therein." (N.J.S.A. 47:3-16; emphasis added)
See also Josefowicz v. Porter, 32 N.J. Super. 585, 591 (App. Div. 1954).
Under N.J.S.A. 40: 36A-7, the statute authorizing the creation of sewer districts,
"* * * The Meetings of [a sewer district] authority shall be public. An authority * * * shall cause full records to be kept of its proceedings, which shall be open to public inspection on reasonable notice, and at reasonable times." (Emphasis added)
Clearly, then, these tape recordings are public records and they were so recognized by the Wyckoff Township Committee in its resolution permitting residents of the town to hear the recordings and make stenographic transcripts therefrom.
However, does the legal classification of these tapes as public records automatically confer the right to make tape transcriptions from them?
N.J.S.A. 47:1A-1 et seq., commonly known as the "Right to know Law," does not confer the right to make tape transcriptions of tape recorded public records:
"* * * public records shall be readily accessible for examination by the citizens of this State, with certain exceptions, for the protection of the public interest." (Emphasis added)
The following section of N.J.S.A. 47:1A-2 sets forth the ground rules for copying public records:
"* * * Every citizen of this State shall also have the right, during such regular business hours and under the supervision of a representative of the custodian, to copy such records by hand, and shall also have the right to purchase copies of such records."
*238 The remainder of this section of the statute makes it perfectly clear that the term "copies of such records" refers exclusively to copies made by a "photographic process, approved by the custodian."
A review of the New Jersey cases indicate that the right to inspect and copy public records is not an unbridled right. The courts will consider the nature of the public records, the motives behind their use, and the effect on the public interest. The Legislature has incorporated this court doctrine in the Right to Know Law: "* * * public records shall be readily accessible * * * with certain exceptions, for the protection of the public interest."
The early case of Ferry v. Williams, 41 N.J.L. 332, (Sup. Ct. 1879), applied the English rule that every person is entitled to the inspection of public documents, provided he shows the requisite interest therein. In Rex v. Lucas, 10 East 235 (K.B. 1808), and Rex v. Tower, 4 M & S 162 (K.B. 1815), requisite interest was sufficient if the party seeking mandamus could maintain a suit on the basis of information found in the records. In Rex v. Justices of Leicester, 4 B & C 891 (K.B. 1825), the court granted a mandamus permitting taxpayers to inspect and take copies of the hearings and associated documents relative to the establishment of the parish rates. In Higgins v. Lockwood, 74 N.J.L. 158 (Sup. Ct. 1906), the court upheld the right of a voter to obtain a mandamus to gain access to registry lists for an election. This case was considered an extension of the English rule as interpreted in the Ferry case, since the petitioner's only interest was as a voter, and no litigation was intended to which the inspection might be an aid.
In re Freeman, 75 N.J.L. 331 (Sup. Ct. 1907), sets forth the rule that where a petitioner seeks by mandamus to examine public records the courts may consider: (1) whether the writ will accomplish the end desired by the petitioner; (2) whether the public interest will be forwarded by a granting of the writ; and (3) whether the petitioner is actuated by proper motives. The public records sought to be inspected in *239 Freeman were certain ex parte affidavits made against an attorney 21 years before the present action. In the original action, based on the affidavits, the court found that the affidavits failed to make out a prima facie case. In the later action the court clearly felt that improper motives were involved and that an attempt was being made to impugn the attorney's character because he was running for office:
"* * * we fail to see how charges, made so long ago, and of so little importance in the view of the court, can assist any voter in deciding as to the fitness for public office 21 years thereafter of a gentleman who has never had the opportunity to meet them * * *
To allow their publication after so long a time might work a very serious injustice without any counter-balancing good." (at p. 332)
Later cases have upheld the rule that the right to inspect public records is subject to the requirement of a lawful, proper and legitimate purpose not adverse to the public interest. Taxpayers Association of Cape May v. City of Cape May, 2 N.J. Super. 27, 31 (App. Div. 1949); Casey v. MacPhail, 2 N.J. Super. 619, 624 (Law Div. 1949).
"There is no right of inspection of a public record when the inspection is sought to satisfy a person's mere whim or fancy, to engage in a pastime, to create scandal, to degrade another, to injure public morals, or to further any improper or useless end or purpose." State v. Harrison, 130 W. Va. 246, 250, 43 S.E.2d 214, 218 (Sup. Ct. App. 1947), quoted with approval in Accident Index Bureau, Inc. v. Hughes, 83 N.J. Super. 293, 299 (App. Div. 1964), affirmed 46 N.J. 160 (1965).
The Supreme Court's recent opinion in Accident Index Bureau, Inc. v. Hughes, 46 N.J. 160 (1965), is not contrary to prior precedent or legislative enactment. In that case the Commissioner of Labor and Industry sought to prevent Accident Index Bureau from inspecting records of injured workmen maintained by the Division of Workmen's Compensation. Accident Index was in the business of preparing lists of workmen who claimed injuries and were awarded compensation. These lists were passed out to employers on request. The employers, in turn, could then refuse to hire a workman who *240 was felt to be a malingerer or a professional claims collector. The Supreme Court, in affirming the Appellate Division, held invalid the Commissioner's regulation declaring Workmen's Compensation reports not to be public records * * * "if the purpose of the inspection or copying [of such reports] is to provide employers with information concerning prospective employees." The basis for the finding of invalidity was not that public records cannot be subject to regulation. Rather, the Supreme Court felt that the regulation as promulgated was "not appropriate to the end in mind." It was readily admitted by the court that Accident Index was performing a disservice to the public and undermining workmen's compensation. However, it was recognized that employers have a legitimate interest in checking these public records. The court held that under the Commissioner's regulation
"* * * a legitimate interest is frustrated in order to bar the poor behavior of some independent agency. * * * `Such records shall be open to the inspection of the public' in the absence of experience demonstrating that an abuse of that right to inspect cannot be isolated and dealt with directly."
Statutes in derogation of the common law must be strictly construed. And the Supreme Court, in Accident Index Bureau, Inc., held that the courts have not been stripped of their power to pass on the right to inspect and copy public records. The courts are reluctant to impede the free flow of information. In general, the public is entitled to know the contents of public records. Inspection of public records will only be prevented where on balance more harm than good will result to the public interest.
In the present case there has been no attempt to thwart the public's right to know. It is stipulated that the township clerk will play the tapes for any resident of Wyckoff requesting to hear them. Furthermore, the tapes are available for the making of a stenographic transcript.
But plaintiffs admit that they already know what is on the tapes. Nor do they claim that their right to know is being denied. *241 They claim that they have an absolute right to re-record the tapes. They want to re-record ten hours of tapes, to "create the dramatic effect that letting the people hear the words as they were spoken would have."
The historical basis for granting the right to inspect and copy public records is to keep the public informed. Plaintiffs do not complain that the public will be denied their right to be informed if a re-recording of the tapes is not permitted.
There are certain inherent dangers in tape-recorded copies which are not present in stenographic or photostatic copies. The Legislature has impliedly recognized this in N.J.S.A. 47:1A-2, supra, where "copies of records" are defined as photostatic copies. It is much easier to tamper with a tape-recorded copy of an event than it is to tamper with a photostatic copy of a document. It is widely recognized that words may easily be omitted or rearranged in a tape copy. The Supreme Court recognizes these inherent dangers, and in R.R. 8:7-5(a) seeks to guard against them by prescribing a strict procedure to be followed when tape-recorded record is made of proceedings before a magistrate's court.
"* * * if a sound recording device is used, the magistrate must supervise and direct its operation, keep the record so made for a period of three months and when a transcript is made, certify its accuracy." Bloomfield Bd. of Health v. Forest Hill Terrace, Inc., 66 N.J. Super. 522 (Cty. Ct. 1961).
It is the express policy of the Wyckoff Township Committee that the tapes not be made available for re-recording. This policy is in accord with both statutory and judicial policy. For these reasons the court finds no legal basis for overturning the resolution of the township committee.
Judgment will be rendered for defendant.