# Richmond.

## CLAY v. BALLARD.

May 5th, 1891.

Richardson, J., absent.

1. MANDAMUS—*Court of appeals—Its jurisdiction.*—Code, § 3086, was intended to define the remedy of *mandamus* as it exists at common law, and does not, nor does the fact that said section gives similar authority to the circuit courts, restrict the jurisdiction of this court to award the writ in all cases in which it may be necessary to prevent a failure of justice.
2. REGISTRATION BOOKS—*Inspection—Remedy.*—Though registrar be allowed no compensation for time lost in so doing, yet *mandamus* will lie to compel him to allow any citizen to inspect, and take copies of the registration books, as they are of a public nature, and every citizen has an interest in them.
3. IDEM—*How § 84 construed.*—§ 84 providing that those books be open at all times to public inspection was intended as a safeguard against fraud, and must be liberally construed.

Petition of Henry DeB. Clay, a legalized voter, for a writ of *mandamus* to compel W. P. Ballard, registrar of election district No. 1, in Newport News, Warwick county, to allow him to inspect and take a copy of his registration books. The defendant demurs to, and also answers the petition. In his answers he states that he never refused to allow an inspection of the books, but denies the petitioner's right to demand or have copies of them.

*L. C. Bristow*, for the petitioner.

*Scott & Scott* and *Meredith & Cocke*, for the respondent.

LEWIS, P., delivered the opinion of the court.

The principal question we have to determine is, whether the petitioner has the right to demand or have copies of the registration books.

Preliminary to this, however, is a question of jurisdiction. It is contended that the present is not a proper case for the exercise of the original jurisdiction of this court. The statute, now carried into section 3086 of the Code, gives the court original jurisdiction to issue writs of *mandamus* to the circuit and other enumerated courts, "and in all other cases in which it may be *necessary to prevent a failure of justice*, in which a *mandamus* may issue according to the principles of the common law."

The precise point of objection to the jurisdiction, if we correctly understand it, is that, inasmuch as the circuit court of Warwick county has jurisdiction in cases of *mandamus*, it is not shown that the interposition of this court is necessary to prevent a failure of justice. In other words, that because a subordinate, local court was open to the petitioner, he ought to have pursued his remedy in that court, and not having done so, the case, as it is, is not within the jurisdiction of this court.

This is a novel view, certainly. Although the language of the statute has long been as it now stands in the Code, we are not aware that such a suggestion has ever before emanated either from the bench or bar. The uniform practice of the court undoubtedly has been to the contrary. And apart from the practical construction which has thus been put upon the statute, we are of opinion that the position of the defendant is clearly untenable.

The writ of *mandamus* issues, no matter from what court it is issued, only in those cases in which there is no other adequate legal remedy, and therefore, to prevent a failure of justice. It is of very ancient origin, and was introduced, as Lord Mansfield said in *Rex* v. *Barker*, Burr., 1267, "to prevent disorder from a failure of justice and defect of police." Being, at common law, a prerogative writ, power to issue it was given to the king's bench, where the king himself used to sit in person, and in this country the power is generally conferred upon the highest courts having original jurisdiction. *Kendall* v. *United States*, 12 Pet., 524; 14 Amer. and Eng. Ency. of Law, p. 93.

Accordingly our legislature has given original jurisdiction to this court to issue the writ, and in doing so has adopted almost the identical terms used by the common law authorities in defining the nature and origin of the writ; that is to say, it has provided that the court shall have jurisdiction to issue the writ in all cases in which it may be necessary to prevent a failure of justice. This shows that the object of the legislature was not to narrow the jurisdiction, but to make it co-extensive in such cases with that of the court of the king's bench in England. In other words, to give the court unrestricted original jurisdiction to issue the writ in all cases in which it may issue according to the principles of the common law. Or, stated differently, the language of the statute relied on by the defendant, and which we have italicized, was intended rather as a definition of the remedy as it exists at common law, than as a restriction on the jurisdiction of the court. This is too obvious to admit of doubt. Had the intention been to make the jurisdiction contingent, or secondary, so to speak, it would surely have been expressed in clear and unmistakable terms.

Many reasons might be expressed for the action of the legislature in conferring this comprehensive original jurisdiction upon this court, but the language of the statute expresses too plainly the intention of that body to require further

discussion.   And it need only be added in this connection that
the exercise of the jurisdiction thus conferred is no more left
to the discretion of the court, than is the exercise of its juris-
diction generally.   Code, sec. 3011, *et seq.*   Of course by this
is meant that the court may not arbitrarily decline to take
cognizance of a case properly before it.   Undoubtedly cases
have arisen at common law in which it has been held that
where the right sought to be enforced is of a private nature,
and where to grant the writ would be to decide important
questions in which persons not before the court are interested,
it is discretionary in the court either to grant or refuse it.
And in many other cases that might be mentioned, the writ is
granted or withheld in the sound discretion of the court.   But
where the object is to enforce obedience to a public statute, it
has been invariably held that the writ is demandable of right.
Bull., N. P., 199; Bac. Abr. tit. Mandamus; High, Extr. Rem.
sec. 9.

The present case is a case of that description if the peti-
tioner's contention be well founded.

And this brings us to the main point in the case, which is
whether the petitioner is entitled, as he contends, to a copy of
the books in question.

These books, undoubtedly, are of a public nature, and there-
fore, upon general principles, independently of any statute on
the subject, any person having an interest in them would have
a right to inspect them.   But the legislature, out of abundant
caution, and with an unmistakable object in view, has seen fit
to enact expressly that they "shall at all times be open to pub-
lic inspection."   Code, sec. 84.

· The case turns upon the construction of this statute.   In
other words, What is the extent of the right of inspection thus
given?   Does it mean that the voter may inspect the lists
only so far as to see whether or not his own name is upon
them?   Or does it give the right to examine and scrutinize,
and, if necessary to enable him to remember and to utilize the

information derived from his examination, to take notes, or, if need be, copies of the entire books?

It is manifest, if the first of these propositions be, as the defendant contends, the true construction, that the right given by the statute is extremely narrow, and incapable of being used for any great advantage to the public, either in the way of the detection of fraud or otherwise. But we are of opinion that it is not the correct view. The provision of the statute was obviously intended, primarily, as a safeguard against fraud, and ought, therefore, to be liberally rather than strictly construed.

At common law, the right to inspect public documents is well defined and understood. The authorities on the subject are very numerous, and they uniformly hold that such a right includes the right, when necessary to the attainment of justice, to take copies. We have been referred to no case, and are aware of none, in which this has ever been denied. Hence we must presume that the legislature, in giving the right of inspection in a case like the present, intended to give it with all its common-law incidents.

Greenleaf, than whom there is no more accurate text-writer in modern times, lays it down that the inspection and exemplification of the records of the king's courts is, and from a very early period has been, the common right of the subject. And as to other public documents, the custodian of them, he says, will, upon proper application, be compelled by *mandamus* to allow the applicant to inspect them, and, if desired, *to take copies.* 1 Greenl. Ev., secs. 471, 478.

Tidd, in his Practice, gives it as a general rule, well settled, that a party has a right to inspect *and take copies* of all such books and records as are of a public nature wherein he has an interest. 1 Tidd's Pr., 593. And in conformity with the rule, Lord Denman, in *Rex* v. *Justices of Staffordshire,* 6 A. & E., 84, remarked that "the court is by no means disposed to narrow its authority to enforce by *mandamus* the production of every

document of a public nature in which any citizen can prove himself to be interested. For such persons, indeed, every officer appointed by law to keep records ought to deem himself for that purpose a trustee."

Judge Dillon, in treating of *the inspection* of corporate books and records, which, he says, are of a public nature, states the same doctrine. "If the corporation," he says, "should refuse inspection of its books and records to any person having an interest therein, or, perhaps, for any proper purpose to any inhabitant of the corporation, whether he had any special or private interest or not, a writ of *mandamus* would lie to command the corporation to allow such inspection, *and copies to be taken,* under reasonable precautions, to secure the safety of the originals." 2 Dill. Mun. Corp., sec. 684.

The rule is stated in pretty much the same terms by another writer of authority, who says *mandamus* will lie in behalf of a member of a municipality entitled to an inspection of its books, to permit him to make such inspection *and to take copies.* High, Extr. Rem., sec. 330.

Authorities to the same effect might be multiplied almost indefinitely. We will, however, refer in this connection only to one other case, and that is *Bromuer* v. *Cotheal,* 10 Barb , 216. In that case the plaintiff, a stockholder in an incorporated insurance company, sued the defendant, an officer of the company, to recover a penalty of $250 for refusing to allow the plaintiff to take a copy of the books containing the transfers of stock and the names of stockholders. The action was brought under a statute of New York which required the books to be open to the examination of every stockholder, and prescribed a penalty for refusing to exhibit them for examination. When the plaintiff called to examine the books, they were shown him, and he commenced copying, whereupon the defendant closed them, saying he had no right to see any but his own name. The plaintiff, under these circumstances, recovered a judgment in the action, which was affirmed, the su-

preme court saying that the right of examination included the right to take memoranda, and, if necessary to enable the stockholder to state the result of his examination, *to take copies.*

The remarks of the court in that case seem to us sound, and they are very pertinent to the present case.

This view, as to the scope and extent of the right of inspection given by the statute, is further enforced by other statutory provisions to which our attention was called in the argument. Thus, provision is made in detail for the mode in which the registration is to be conducted ; for the transfer of voters who have removed from one election precinct to another; for the striking off from the registration-books the names of those who have lost the right to vote by conviction of crime, and for the purging of the books—all, or the most, of which provisions would surely fall short of having their intended effect, unless the books were put upon the footing of public records.

Especially is this so with respect to those provisions relating to the purging of the books. By section 86 of the Code, the right is given to any five qualified voters of any election district to post written or printed notices, fifteen days before any regular day of registration, at not less than three public places in said district, of the names of all persons alleged by said voters to be improperly on the registration-books of that district; and by the same section it is made the duty of the registrar, on the regular day of registration, to hear testimony on the subject, and, if he be satisfied that any person mentioned in said notice is not a qualified voter, to strike his name from the books.

This is a most important provision, and it is obvious that a full and intelligent exercise of the right it gives is dependent upon the right not only to inspect but to take copies of the registration-books. It was virtually conceded in the argument that the right to copies of the books could not be successfully resisted if this were a proceeding by five qualified voters hav-

ing in view the exercise of the right given by the section just mentioned; but the statute no more gives the right to compel copies to be given in a joint proceeding by five voters than in a proceeding, like the present, by a single voter; nor is the right to take copies any more given for one legitimate purpose than another. That right is purely a common-law incident of the right of inspection, given by the 84th section, except so far as it may be implied from other provisions of the statute.

Nor does the fact that no compensation is provided for the registrar either for making copies, or for the time consumed by others in taking copies under his observation—upon which fact much stress was laid in the argument—in any way affect the case. Neither did the legislature see fit to provide compensation for keeping the books *at all times* open to inspection, and yet the right of the public to inspect them without charge is not disputed. The question of compensation was a matter exclusively for the legislature, and it is not for the courts to nullify a plain legal right, because certain duties are imposed upon registrars for the performance of which no compensation is provided by law.

As to the right of the petitioner to a *mandamus* in the present case we have no doubt. The duty, performance of which is sought to be coerced, is a public duty, and hence the interest which he, as a citizen, has in the enforcement of the laws is a sufficient interest to entitle him to maintain this proceeding. "Where the question," says High, "is one of public right, and the object of the *mandamus* is to procure the enforcement of a public duty, the people are regarded as the real party, and the relator at whose instigation the proceedings are instituted, need not show that he has any legal or special interest in the result, it being sufficient to show that he is a citizen, and as such, interested in the execution of the laws." High, Extr. Rem., sec. 431. See, also, *Ferry* v. *Williams*, 41 N. J. (Law), 332.

A peremptory *mandamus* must, therefore, be awarded as prayed for in the petition.

LACY, J., dissenting, said:

Upon the petition of the petitioner Clay, a citizen of Warwick county, Virginia, the court is asked to award the peremptory writ of *mandamus* to compel the respondent, one of the registrars of said county, to furnish to him a copy or to allow him, the said petitioner, to make a copy of the registration books in his charge as a public officer of the State of Virginia.

The respondent answers, and says that he is a public officer of this State, that he is the registrar for the district in question, and has duly qualified as such, and taken an oath to perform the duties of his said office according to law. That chapter 8 of the Code of Virginia, sets forth in §§ 71, 73, 74, 75, 76, 78, 79, 80, 81, 82, 83, 84, 85, 86, plainly what his duties are, and how he shall perform them. That the law provides for a copy of the registration books in section 71, *supra*, and only there; and then it is provided that when the said books become so mutilated and defaced in the judgment of the electoral board of the county, under which he holds his office, as to render it proper.

That as an honest, faithful, and discreet citizen and officer, he has ever looked to the public good, and sought to do his duty as directed by the law of Virginia.

"That within the last two or three months H. DeB. Clay has made two applications to him for the purpose of inspecting, making memoranda, and copying the registration books, which were under his authority and control; that he has never refused to allow the said books to be inspected, but has ever and will ever keep and preserve the same, and have them open to the inspection of the public. But he has ever and will ever, un-

less compelled by authority of law, refuse to allow said registration books to be copied." He responds further that if he gave a copy to one citizen he could refuse none; that he is the lawful custodian of these books, and is required by law to them safely keep, and as the law does not allow them to go out of his custody, his presence would be necessary whenever and wherever a copy should be made.

That he has often been required to furnish copies by political partizans of both political parties, but that he has refused to allow copies of the registration books to be made because it is no part of his duty to do so.

That his office is a statutory office, and the duties of the same are prescribed by law, and that when he has strictly complied with the law's prescription he has failed in no legal duty.

That the petitioner Clay, like any other citizen of the Commonwealth, has the right to inspect the registration books, so far as they may concern him, but he cannot as a citizen set up any supervisory powers over the said books. That the law prescribes in section 86 of chapter 8 of the Code of Virginia, how these books may be purged if they are supposed to require that.

That it is by law provided, that it shall be lawful for any five qualified voters of any election district to give notice; and the notice to be signed by them all, when by proper proceedings, upon notice, and upon legal evidence, the questions raised can be duly considered and correctly and justly determined.

That the law does not bestow upon one citizen this or any other right concerning these books, except the right to inspect as one of the public (that is to inspect so far as they concern him), and not so granting, but expressly providing for the matter otherwise, the effect is to exclude the claim.

But that the petitioner cannot claim the right by implication, upon the insistence that the law does not forbid; to have the right to *mandamus* he must not *only* show that the law does

*not forbid* his claim, but he must establish a *clear legal right,* and be without any other adequate legal remedy.

It is not the province of this writ to determine whether he, or some other person has, or he has or not such a right, his right must be clear.

"To justify the issuance of the writ to enforce the performance of an act by a public officer, two things must concur: the act must be one the performance of *which the law specially enjoins as a duty resulting from an office,* and an actual omission on the part of the respondent to perform it. It is incumbent on the relator to show not only that the respondent has failed to perform the required duty, but that the performance thereof is actually due from him, at the time of the application." Amer. & Eng. En. of Law, 14, 105, and numerous authorities there cited. This is a concise and correct statement of the law upon this branch of this inquiry. Again in the same work, at p. 130, upon the same subject, it is said:

"The office of the writ of *mandamus,* when addressed to a public officer, is to compel him to exercise such functions as the law confers upon him.

"When the law enjoins upon such officer the performance of a specific act, or duty, obedience to the law may, in the absence of other adequate remedy, be enforced by this writ.

"But the writ neither creates nor confers power upon the officer to whom it is directed. It can do no more than to command the exercise of powers already existing.

"And in order to compel a public officer by *mandamus* to do an act at the instance of the relator, he must show that he has an interest in the act sought to be coerced.

"The writ of *mandamus* lies to compel a public officer to perform a duty concerning which he is vested with no discretionary power, and which is either imposed upon him by some express enactment or necessarily results from the office which he holds." See authorities cited, note (1), and note (2), p. 140, 14th Vol. Amer. & E. En. of Law.

By the law of this State (section 84, Code of Virginia), the registrar is required to keep and preserve the registration books, and that the said books shall at all times be open to public inspection; there is no contention that there is any duty imposed upon him by law to copy these books, unless the duty is imposed by the words, "and the said registration books shall be at all times open to public inspection."

But the majority of the court finds in these words, the right in any citizen to have a copy made of these books. Does the right to inspect carry with it the right to have a copy? What does an inspection mean? In its most comprehensive sense, to look into, from the Latin *inspciere*, but in practice, an examination, and in this sense all public records are open for an inspection by any person having an interest in them, and the respondent does not refuse to permit an inspection of these books. But the right to a copy is not bestowed by the law, none is provided for, and no compensation allowed for making it.

In the case of public judicial writings, these are open to the inspection of every one upon paying the fees of the officer charged with their custody; and if this inspection is denied, the right is enforced by rule of court when an action is pending, and by writ of *mandamus* when no action is pending. Min. Inst., Vol. 4, p. 714; Greenlf. Ev., § § 472, 477. 478.

This is conceded, no person has denied that it is the duty of a public officer to allow an inspection of such public records, and by reason of one statute which so provides, copies may be had of these, and the law prescribes the officer to make the copy and the fees payable therefor, and the duty being plain, and prescribed by law, any citizen may have a copy upon application, and upon paying the fees prescribed by law, and a failure to perform this duty will entitle the citizen, or any person, to the writ of *mandamus* against the officer.

But there are public writings not judicial, such as these official registers of the qualified voters of the district, and the right to an inspection of these is not so universal as with re-

gard to public writings, judicial in their character, and is regulated by law in this State.

The writing in question is open by law to the inspection of the public, and this far there is a public duty upon the registrar, but for obvious reasons the law does not provide for copies; these books are subject to daily changes throughout the year by sec. 78 of the Code, a name or names may be added or removed as occasion requires. There is no recordation of this writing, it has *no permanent* official character, or form. A copy would be no exemplification of the original, for a single day; necessarily, and by law actually *protean* in character, it changes in the midst of a shifting population continually.

It is a public writing under the sanction of the law, and its uses by the law prescribed; it is not for the courts to prescribe how it shall be kept, or when copied. With the wisdom of the law we have little to do; it is not the policy of the law to require copies to be made of these books, except when the originals have been destroyed. It appears to me to be wisely not provided that these books shall be copied at the instance of everybody.

A copy might be obtained every week in the year, and yet no two copies be alike; one political *leader* or *follower* having fortified himself with what he regarded as an unanswerable authority for all of his associates to demand the right to vote, might find his antagonist also armed with a supposed evidence *percontra*, and many disputes be set up at the polls, and many tribunals installed to determine questions left to the determination of a board of sworn officers, the law has wisely left such a provision out. But however that may be, and with that I claim not to deal, my opinion is that a right to a copy *must first be established by law,* then if the right so clearly exists, it must be *appointed by law with the respondent to make and deliver it, before it can become his duty to do so.*

That if there is no right established and ordained by the law, and no duty imposed upon the respondent by law to make

the copy, the court cannot create the duty and then issue the writ to compel its performance. The question is one of a legal right, and the petitioner must show the existence of such right, or the *mandamus* cannot issue.

I am of opinion to deny the writ, and to dismiss the petition.

MANDAMUS ALLOWED.