76 N.J. Super. 329 (1962)
184 A.2d 530
PETER A. DiMARCELLO, PETITIONER-APPELLANT,
v.
AMERICAN BRIDGE COMPANY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 1962.
Decided October 1, 1962.
*330 Before Judges GOLDMANN, FREUND and FOLEY.
Miss Ruth Rabstein argued the cause for appellant (Pellettieri and Rabstein, attorneys; Mr. George L. Pellettieri, on the brief).
Mr. John J. Monigan, Jr. argued the cause for respondent (Messrs. Stryker, Tams & Dill, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This appeal stems from proceedings instituted by petitioner by way of motion for an order directed to respondent company and certain of its employees to show cause why they should not be held in contempt of court (sic) for interfering with the prosecution and processing of claim petitions which petitioner had theretofore filed in the Workmen's Compensation Division, as well as attempting by duress to compel the discontinuance of such claim petitions, and further, for subornation of perjury and for obstructing the obtaining of compensation benefits as provided *331 by law. The notice of motion stated that the application would be based upon the testimony taken in the Division on March 24 and 25, and April 28, 1959. Deputy Director Neutze (now Judge of Compensation) presided at those hearings.
Petitioner sustained injuries arising out of and in the course of his employment with the company on two occasions  to his right leg in June 1957 and his left foot in October 1957. He filed separate petitions for compensation on July 2, 1958 and respondent answered on September 26 following. It appears that petitioner lost no compensable time after either accident, but continued performing his regular duties until he was laid off on May 30, 1958 (a little more than a month before the filing of the claim petitions) as part of a general cutback of employees because "the company was slack."
In August he received a registered letter informing him that respondent was in a position to offer employment. When he went to the employment office he found present Doctors Norton and Joyce, the plant nurse and Mr. Cook, the Supervisor of Employment and Safety. Dr. Joyce examined him and told Dr. Norton that he found petitioner physically fit. Dr. Norton asked, "How is your leg?" Petitioner answered, "It still bothers me but it * * * don't bother me enough to interfere with my work." Dr. Norton said he would have to call in Plant Superintendent Engbrecht because "I can't put you to work." When Engbrecht arrived the doctor told him, "I can't put him to work because the answer he gave me is no good." According to petitioner, when he pleaded for a chance to return to work because of his dependents, Engbrecht said, "Well, as long as your leg hurts and you got a petition in, we are going to have to leave you out." Engbrecht suggested that Cook might have light work for him, to which Cook responded, "I ain't got nothing for you."
Continuing with petitioner's testimony: he said that he returned to the plant a week later, and when Dr. Norton *332 asked him how his leg was, he again informed the doctor that it bothered him, but not enough to interfere with his job. Dr. Norton then said, "We can't take an answer like that; you have to say there is nothing wrong with it to go back to work." Further, the doctor said, "You got a petition in anyway; that is hurting you too."
Petitioner was at the plant for a third time a week later. He testified that the doctor told him, "When you decide to give me the correct answer, we will be able to put you to work." The doctor had a tape recorder, and when petitioner said that he didn't know why he had to talk into the machine  "I am not a criminal"  the doctor replied, "Well, you have to talk over it." The result was that when the doctor again asked him if his leg hurt, petitioner said that it was not hurting any more, and "If that's the answer you want, Doctor, that is what I will give you." The doctor said, "Don't forget now * * * what you said over this microphone, it is going to be held in court on your petition."
Petitioner went back to work the following Monday.
The deputy director, in his findings and conclusions, reviewed the legislative history of our Workmen's Compensation Act with respect to the contempt power of the Workmen's Compensation Division and its predecessor Workmen's Compensation Bureau. He concluded that since it was a statutory tribunal and there had been no legislative grant of power in the circumstances presented, petitioner's application for an order to show cause had to be denied.
On appeal the County Court affirmed the judgment with respect to the Division's lack of power to punish for contempt under the facts presented. However, the county judge was of the opinion that there was not sufficient evidence to warrant a finding that the company or the several individually named parties "were engaged in the practice of interfering with and threatening an injured workman who had filed a claim for workmen's compensation."
Before proceeding to a discussion of the Division's contempt power, we find it necessary to state that we cannot *333 agree with the county judge's last-mentioned factual finding. Rather, we agree with Deputy Director Neutze when he said:
"* * * the proofs made me cognizant that the respondent has engaged in the practice of interfering and threatening and injured workman who had filed a claim for Workmen's Compensation. Its tactics in this case must come in for sharp criticism and should be prohibited in the future. There should be some means to protect the injured employee in such cases. However, I am convinced that any corrective measures in this matter rest solely with the Legislature and in that tribunal only can such practice be made unlawful and unauthorized."
Petitioner's account of what had happened when he thrice presented himself at respondent's office to obtain re-employment was not countered by respondent company. Although it could have called Doctors Norton and Joyce, and Cook and Engbrecht at the hearing on the motion, it failed to do so. Petitioner's recital therefore stands uncontradicted. It may be that respondent failed to meet that testimony because it deemed the Division had no jurisdiction to hold in contempt.
We fully join in what the deputy director had to say about a respondent doing nothing to discourage or interfere with the processing and prosecution of claim petitions. No employer should hold the possibility of re-employment as a club over the head of an employee who, because of his work-connected injury, has chosen to pursue his statutory remedy in the Workmen's Compensation Division. The actions of respondent's representatives  if petitioner's story is to be believed  merit strong censure.
We turn to the central question argued on this appeal  the power of the Division to hold a respondent in contempt in a case like this.
The Workmen's Compensation Act was passed in 1911, and at that time compensation claims were adjudicated by the judges of the Court of Common Pleas. L. 1911, c. 95, § 18. The Department of Labor, first created in 1904 (L. 1904, c. 64), was reorganized with departmental bureaus in 1916 (L. 1916, c. 40). In the same year the Legislature, *334 by L. 1916, c. 54, established a Workmen's Compensation Aid Bureau within the Department, the Commissioner of Labor as its head being charged with the duty of observing and reporting on the operation of the Workmen's Compensation Act. Chapter 54 of the Laws of 1916 was repealed by L. 1918, c. 149, § 22. The 1918 act created the Workmen's Compensation Bureau in the Department of Labor. In 1948, as part of the program of reorganizing the executive and administrative agencies of the State under the new Constitution of 1947, a Department of Labor and Industry was created in the Executive Branch of the State Government, L. 1948, c. 446, with the Commissioner of Labor and Industry as the administrator and head of the department. The Division of Workmen's Compensation was one of the three divisions set up in the new department (section 8, N.J.S.A. 34:1A-8).
Thus, workmen's compensation has since 1918 been administered in a department of the Executive Branch of the government. See L. 1948, c. 446, § 1; N.J.S.A. 34:1A-1. Jurisdiction of workmen's compensation cases was transferred to the Workmen's Compensation Bureau from the Court of Common Pleas when the Bureau was created by L. 1918, c. 149. By section 13 of that act the Commissioner of Labor, each deputy commissioner and each of the referees were declared to have "the same power as the Court of Common Pleas to issue subpoenas to compel the attendance of witnesses and the production of books and papers." The provisions of that act relating to subpoenas have been continued on the statute books without substantial change. L. 1921, c. 229, § 6; R.S. 34:15-60; L. 1939, c. 291; L. 1953, c. 33, § 55; N.J.S.A. 34:15-60.
Returning to section 13 of the 1918 act, that section further provided that
"* * * The failure of any witness, when duly subpoenaed, to attend or give testimony shall be punishable by the Court of Common Pleas in the same manner as such failure is punishable by such court in a case therein pending." *335 This provision was enlarged by L. 1921, c. 229, § 6, which recited that
"* * * Misconduct on the part of any person attending a hearing, or the failure of any witness, when duly subpoenaed, to attend or give testimony shall be punishable by the Court of Common Pleas in the same manner as such failure is punishable by such court in a case therein pending."
Section 13, as so amended, was carried into the Revision of 1937, R.S. 34:15-60.
In 1939 the Legislature eliminated this last vestige of the original jurisdiction of the Court of Common Pleas in workmen's compensation cases. The contempt power in such cases was placed in the Bureau (now Division) of Workmen's Compensation proper. L. 1939, c. 291, provided in pertinent part:
"* * * Misconduct on the part of any person attending a hearing, or the failure of any witness, when duly subpoenaed, to attend or give testimony shall be punishable by the commissioner, each deputy commissioner and each of the referees, in the same manner as such failure is punishable by the Court of common pleas in a case therein pending."
Finally, in 1953 (L. 1953, c. 33, § 55) the reference to the Court of Common Pleas in the 1939 act was changed to "County Court."
The Workmen's Compensation Division is a tribunal wholly statutory in origin. In Nagy v. Ford Motor Co., 6 N.J. 341 (1951), Justice Heher stated:
"The Compensation Bureau is a creature of the statute. Its jurisdiction is special and limited, and where there is reasonable doubt of the existence of a particular power, the power is denied. * * * Deviation from the Bureau's established sphere of action cannot be given by consent of the parties or be made effective by waiver or estoppel. * * * Where the Bureau transcends its jurisdiction, the action is a nullity. * * *" (at page 349)
The Division is not a court of law. In Mulhearn v. Federal Shipbuilding & Dry Dock Co., 2 N.J. 356 (1949), the question squarely raised was whether the Division was an *336 inferior court within the meaning of the Constitution of 1947, so as to permit the Supreme Court to review its judgments directly by certification. The employer argued that the Division was a court. Chief Justice Vanderbilt held that, granting all the characteristics of the work of the Division of Workmen's Compensation were typical of judicial proceedings, the Division "still lacks the essential attributes of a court under the new Constitution" (2 N.J., at page 360). It was simply an administrative tribunal in a department that is a component part of the executive establishment  an administrative agency exercising a delegated legislative power.
The sole contempt power conferred by the Legislature upon the Division is limited, in the words of the statute, N.J.S.A. 34:15-60, to "[m]isconduct on the part of any person attending a hearing, or the failure of any witness, when duly subpoenaed to attend or give testimony." This provision, which is the only one in the Workmen's Compensation Act touching upon the contempt power of the Division, does not encompass actions not directly connected with the hearing, with the single exception of misconduct on the part of any person attending the hearing.
Petitioner contends that the Division "cannot be compared to the standard administrative agency * * * it is fundamentally different." From this it is argued that the Division possesses "more inherent powers for the protection of the individuals before it and for its own self-preservation than the pure administrative agencies."
We find neither a legislatively delegated power nor an inherent power in the Division to hold a person in contempt in the circumstances of this case. Although in some respects different from other administrative tribunals, the fundamental distinction between the Division and a court has not only been recognized by the Legislature in the Workmen's Compensation Act but by the Supreme Court in the Mulhearn case, above. It enjoys only the limited contempt power conferred by N.J.S.A. 34:15-60.
*337 The contempt power of the Division may not be equated, as petitioner attempts to do, to that enjoyed by the Court of Oyer and Terminer, In re Cheeseman, 49 N.J.L. 115 (Sup. Ct. 1886), the Court of Quarter Sessions, Croasdale v. Court of Quarter Sessions of Atlantic County, 88 N.J.L. 506 (Sup. Ct. 1916), or our present municipal courts, Board of Health, Weehawken Tp. v. N.Y. Central R. Co., 10 N.J. 284 (1952).
What happened when petitioner called at respondent's plant seeking re-employment does not fall within the ambit of "misconduct on the part of any person attending a hearing." N.J.S.A. 34:15-60 recognizes only one kind of contempt occurring out of the presence of the deputy director and punishable in the Division  failure of a witness, when duly subpoenaed, to attend or give testimony.
We cannot endow the Division with power to hold in contempt where an employer or other person has interfered with its proper administration of the Workmen's Compensation Act. Only the Legislature may do so.
Affirmed.