95 N.J. Super. 39 (1967)
229 A.2d 812
ACCIDENT INDEX BUREAU, INC., AND HILLSIDE METAL PRODUCTS, INC., BOTH CORPORATIONS OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS,
v.
RAYMOND F. MALE, COMMISSIONER OF THE DEPARTMENT OF LABOR AND INDUSTRY, AND HERBERT KORANSKY, DIRECTOR OF THE DIVISION OF WORKMEN'S COMPENSATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 1967.
Decided May 5, 1967.
*42 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Edward B. Meredith argued the cause for appellants (Messrs. Meredith & Meredith, attorneys).
Mr. Richard Newman, Deputy Attorney General, argued the cause for respondents (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
Pursuant to leave granted under R.R. 2:2-3(a), plaintiffs appeal from an interlocutory order of the Law Division denying their application for a preliminary injunction pending final hearing, and dissolving an ex parte temporary restraint theretofore granted.
In their complaint plaintiffs sought a declaratory judgment (1) permanently enjoining defendants from enforcing the provisions of chapter 164 of the Laws of 1966; (2) permanently enjoining defendant Herbert Koransky from enforcing his Division Directive No. 14; (3) permanently enjoining defendants from interfering with or hindering plaintiff Accident Index Bureau, Inc. from examining and making copies of records made public by R.S. 34:15-59; (4) adjudging and declaring chapter 164 unconstitutional and void, and (5) adjudging and declaring the directive unconstitutional and void.
At oral argument the parties stipulated that we might make a final disposition of the appeal upon the basis of the record before us, except for a copy of the present advertising brochure now circulated by Accident Index Bureau, Inc. to be furnished to the court, as though the final hearing had been concluded upon the basis of the record as supplemented and the relief sought by plaintiffs had been denied. The brochure has been furnished and the record is agreeably supplemented thereby. Hillside Metal Products, Inc., a customer of the co-plaintiff, has been joined as a party plaintiff, but the issue *43 really concerns the validity of the statute and directive in their relation to Accident Index Bureau, Inc.
This appeal is a sequel to our decision in Accident Index Bureau, Inc. v. Hughes, 83 N.J. Super. 293 (App. Div. 1964), affirmed 46 N.J. 160 (1965). We there held that an executive order by the Governor under "The Right to Know Law," L. 1963, c. 73, N.J.S.A. 47:1A-1 et seq., and a regulation based thereon by the Commissioner of Labor and Industry, deeming workmen's compensation records not to be public if the purpose of inspecting or copying them was to provide employers with information concerning prospective employees, were invalid. We concluded that the order and regulation contravened substantive due process. We need not repeat herein all of the reasons which impelled that conclusion or the details of the rationale of the Supreme Court in its affirmance.
Following that litigation and evidently motivated by a statement in the Supreme Court opinion to the effect that "nothing we have said should be thought to question the power of the Legislature to deal with the problem" (46 N.J., at p. 166), there was adopted chapter 164 of the Laws of 1966, which provides:
"Notwithstanding any other provision of the chapter to which this act is a supplement or of any other law, no records maintained by the Division of Workmen's Compensation shall be open to inspection or copying by or on behalf of any person who seeks such inspection or copying for the purpose of selling or furnishing for a consideration to others reports or abstracts of workmen's compensation records or work-injury records pertaining to any individual, except in the case of an investigation by or on behalf of an employer in connection with any pending workmen's compensation case."
Obviously, this new statute is aimed at curbing only the activities of commercial agencies, such as Accident Index Bureau, Inc., engaged in the business of "selling or furnishing for a consideration to others" reports or abstracts of workmen's compensation records. The employers themselves, or their employees, are not barred from inspecting or copying *44 the workmen's compensation records for any purpose. It is the performance of this inspecting and copying by those who "sell or furnish" the information to others "for a consideration" which alone comes within the statutory bar. By way of exception the ban does not extend to the commercial agencies if the information is gathered in connection with any pending workmen's compensation case.
Directive No. 14, issued by defendant Koransky as Director of the Division of Workmen's Compensation to all personnel on June 29, 1966, provides:
"No records of the Division of Workmen's Compensation shall be inspected or copied by anyone unless and until the hereinafter form is signed by the persons seeking such inspection:
I, the undersigned, do hereby state under penalty of the law, that I seek the inspection or copying of the records of the Division of Workmen's Compensation concerning ___________________ on behalf of ____________________________________________________ (employer) in connection with a pending workmen's compensation case by said ______________________________________ (petitioner.)
___________________________________________________
Date: ________________________."
This directive is based upon chapter 164 of the Laws of 1966, effective June 18, 1966. The word "anyone" appearing therein, we are told, is "only meant to refer to parties covered by chapter 164, and it is applied by the Division in accordance with this construction." If that is so the directive should have been no broader in its limitation than chapter 164.
Manifestly, validity of the directive depends upon the statute upon which it is bottomed. Accordingly, we concern ourselves only with the challenge made to the constitutionality of this statute. In substance then, the new statute and directive thereunder would accomplish essentially what the executive order and Commissioner's regulation in the former case were intended to effect  preclusion of a commercial agency from inspecting and copying workmen's compensation records for the purpose of informing employers of the industrial accident histories of prospective employees.
*45 Chapter 164 represents a departure from the previous legislative policy with reference to workmen's compensation records. R.S. 34:15-59 had provided: "Such records shall be open to the inspection of the public." The present enactment states plainly that they shall not be open to inspection and copying by persons who seek such inspection or copying in order to sell or furnish the information thus gathered to others "for a consideration," except in connection with any pending workmen's compensation case. Thus, plaintiff reporting agency is now effectively precluded from inspecting these records in order to supply employers with the workmen's compensation histories of prospective employees. On the other hand, the employers themselves have free access to these records for the very purpose for which the reporting agency has been heretofore engaged to gather the information.
It is clear, then, that the law discriminates between those who may and those who may not inspect and copy these records  albeit the purpose for the inspection and the copying is the same. The issue is whether such discrimination comports with the constitutional guarantees of due process of law and the equal protection of the laws. United States Constitution, Amendment XIV, Section I.
Not all classifications for purposes of Legislation are invalid. It is the invidious discrimination, lacking any valid basis for its existence, which violates the constitutional mandates. David v. Vesta, 45 N.J. 301 (1965). In that case, our Supreme Court upheld the New Jersey "Law against Discrimination," N.J.S.A. 18:25-1 et seq., applicable generally to the sale or rental of housing accommodations, even though accommodations in single-family homes and in certain two-family homes and three-family residences were not covered. As the court said:
"More specifically, evils in the same field may be of different dimensions and proportions, and the reform may therefore take one step at a time, attacking the evil where it seems most acute to the legislative mind." (at p. 315) *46 The court noted that the one who assails legislative classification must carry the burden of showing its arbitrariness. It further observed that a legislative classification having some reasonable basis is not invalid merely because it is not made with mathematical nicety or because in practice it results in some inequality. (45 N.J., at pp. 314-315)
David v. Vesta reiterated what Chief Justice Weintraub had said earlier for the court in New Jersey Restaurant Ass'n v. Holderman, 24 N.J. 295 (1957):
"Thus it is not enough to demonstrate that the legislative objective might be more fully achieved by another, more expansive classification, for the Legislature may recognize degrees of harm and hit the evil where it is most felt. * * * The Legislature may thus limit its action upon a decision to proceed cautiously, step by step, or because of practical exigencies, including administrative convenience and expense, * * * or because of `some substantial consideration of public policy or convenience or the service of the general welfare.' * * * Hence it may `stop short of those cases in which the harm to the few concerned is thought less important than the harm to the public that would ensue if the rule laid down were made mathematically exact.'" (at pp. 300-301)
In that case the Commissioner of Labor and Industry had made a minimum fair wages standards order relating to restaurant occupations, but excepted restaurants operating in hotels. The order was held to be not violative of the equal protection clause because of such classification. The Chief Justice noted that "where an act of the Legislature is challenged, there is no way to corral the considerations which moved the individual lawmakers to vote for the measure * * *; and if any state of facts can reasonably be conceived which would support the classification, the act must be sustained." (at p. 301)
In our earlier opinion we found lacking any reasonable basis for distinguishing between an employer's agent or employee, who would be permitted to inspect and copy the records, and the employer's chosen independent contractor, who would not. 83 N.J. Super., at p. 301. We also found invidious the former classification which would deny the right to *47 a reporting agency to inspect and copy the records before the employment commenced, but permit it at any time after the hiring, no matter for what purpose or how short that period might be. The latter infirmity does not exist in the present statute and directive under review. The commercial agency is barred from inspection and copying before and after the hiring, except as to a pending workmen's compensation case. As to our assertion that the distinction between an employer's agent and his independent contractor was "arbitrary and discriminatory," 83 N.J. Super., at p. 301, the Supreme Court did not base its decision thereon, or express concurrence in that rationale. Rather, it found the regulation in question "not appropriate to the end in mind," 46 N.J., at p. 165, and stated:
"A regulation denying access to the records by an independent agency which interferes with the basic objectives of the compensation law described above, with standards suitably expressed to forewarn, would be to the point." (at p. 166)
It went on to conclude, as noted above, that nothing it said "should be thought to question the power of the Legislature to deal with the problem." Ibid.
We noted in our former opinion, 83 N.J. Super., at p. 298, that the common law right of a citizen to inspect public records has never been an unlimited one. The right has been subject to the requirement of a lawful, proper and legitimate purpose and that it be "not adverse to the public interest." In adopting chapter 164 the Legislature has evidently concluded that inspection and copying of workmen's compensation records of past histories of prospective employees, when done by commercial agencies such as plaintiff, is adverse to the public interest. It might have barred all persons, including prospective employers, from such an inspection, because of its solicitude for those disabled by reason of prior industrial accidents.
Our public policy, as expressed in many provisions of our Workmen's Compensation Law, is to help rather than hinder *48 the disabled in their search for employment. The labor unions have for many years importuned the Legislature to restrain reporting activities such as those of plaintiff, particularly deemed obnoxious on account of the scare-type advertising indulged in. They expressed concern as to the adverse impact upon those seeking employment who had been or might be unfortunate victims of an industrial accident and honestly asserted a claim for benefits under the act. That serious, potential, adverse effect is well described by Justice Francis in his dissenting opinion in the former case. 46 N.J., at pp. 167-170. Plaintiff's latest advertising brochure has been toned down, but its solitary and so-called "typical report" detailed therein reflects that employee "John Doe" made 13 claims for workmen's compensation benefits, in seven of which "no award" was made. This selected and obviously extreme example of an accident-prone and oft-unworthy claimant speaks for itself. The warning "Why hire by Crystal Ball?" present in the former brochure is repeated. A prior restraint upon a reversion to what plaintiff has done in the past in its advertising or what other similar agencies might do is not feasible in the face of the constitutional hurdles of freedom of speech and of the press.
There is a conflict between plaintiff's commercial enterprise, because of its potentiality to induce the non-hiring of those previously disabled in industrial accidents, and the public policy of the State encouraging the employment of the disabled. The ready availability of plaintiff's services at a nominal cost, encouraged by its advertising no matter how innocuous it may presently appear to be, has a tendency offensive to the public policy. The Legislature, in its wisdom, could properly find a substantial good to be accomplished, viz., the employment of the disabled, and an evil to be eliminated, viz., commercial activities disclosing for a profit to employers prior workmen's compensation histories of prospective employees with the consequential non-hiring of the victims of industrial accidents, no matter how honest were their claims. Its adoption of chapter 164 may be regarded *49 at least as a first step in fulfillment of its purpose. Substantive due process has been thus satisfied; and the distinction between who may and who may not inspect the records is not invidious to the point of denying plaintiff agency equal protection of the laws.
We find lacking in merit plaintiff's contentions that chapter 164 is invalid as a "bill of attainder" and also constitutes a palpable abridgment of freedom of speech. This statute is not a bill of attainder. "The singling out of an individual for legislatively prescribed punishment constitutes an attainder * * *." Communist Party v. S.A.C. Board, 367 U.S. 1, 86, 81 S.Ct. 1357, 1405, 6 L.Ed.2d 625 (1961). Plaintiff agency has not been thus singled out. The statute is applicable to all similarly situated and will apply to others organized in the future. "Legislatures may act to curb behavior which they regard as harmful to the public welfare, whether that conduct is found to be engaged in by many persons or by one." Id., at p. 88, 81 S.Ct., at p. 1406.
Nor has plaintiff's freedom of speech been enjoined by the statute. The dissemination of information is not absolute. It may be limited in order to obviate a threat to the public welfare. Gibson v. Florida Investigating Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963). There are instances where denial of access to public records has been upheld as valid. See cases cited in our former opinion, 83 N.J. Super., at pp. 298-299, and in Justice Francis' dissent, 46 N.J., at p. 167. Presumably, the Legislature found a threat to the public welfare to exist when it enacted this statute.
The Supreme Court expressed concern in its opinion, 46 N.J., at p. 166, that the executive order and administrative ruling then involved might offend the existing statutory law, e.g., R.S. 34:15-59, requiring that workmen's compensation records "shall be open to the inspection of the public," and the "Right to Know" law, N.J.S.A. 47:1A-1 et seq. That same concern does not exist in the present situation because *50 the statute under review is an express legislative supplement of Title 34, Chapter 15.
If this appeal had been limited to the question of the propriety of the trial court's denial of the preliminary injunction, we would have had no hesitancy in affirming that order. Chapter 164 is presumptively valid. Plaintiffs, moreover, did not demonstrate the probability of irreparable harm being sustained by them pending a final determination. See Citizens Coach Co. v. Camden Horse R.R. Co., 29 N.J. Eq. 299 (E. & A. 1878). An interlocutory injunction should not issue if plaintiff's asserted rights are not clear as a matter of law. General Electric Co. v. Gem Vacuum Stores, 36 N.J. Super. 234, 236 (App. Div. 1955). Certainly, that was the situation here.
We hold that chapter 164 of the Laws of 1966 and Directive No. 14 of the Division of Workmen's Compensation are constitutional and valid. Accordingly, the interlocutory order denying plaintiffs' application for a preliminary injunction is affirmed.
The matter is remanded to the Law Division for entry of a judgment declaring the statute and directive valid and denying the application for a permanent injunction.